AMERICAN AUTOMOBILE INS. Co., Complainant, Appellant, *v.* FERN JONES, Defendant, Appellee.

(*Nashville,* December Term, 1931.)

Opinion filed January 23, 1932.

KNIPMEYER & DIXON and J. S. EDMONDSON, for complainant, appellant.

MILES, WARING & WALKER and W. H. BORSJE, for defendant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought to recover on an indemnity policy issued to Iten Biscuit Company. Fern Jones was injured while riding as a guest, by invitation of one Wilkes, an employee of the Biscuit Company, in a car owned by the Company, the named assured in the policy. The policy carried a rider providing for coverage of employees using the Company's cars with its consent, reading as follows:

"That in addition to the assured named in this policy, such insurance as is granted hereunder shall be available, in the same manner and under the same conditions and to the same extent as it is available to the Assured named herein, to any person or persons, except chauffeurs and domestic servants, while riding in or legally operating the automobile covered by this policy, and to any person, firm or corporation legally responsible for the operation thereof; but only while it is being used for the purposes specified in Statement III of the Schedule of Statements and with the consent of the Assured named herein, or, if such Assured is an individual, of an adult member of his household who is not a chauffeur or domestic servant."

At the time of the accident, while Wilkes was in the car, it was being driven by one Thrice, a stranger to the Company, without the knowledge of the Company. Also,

at the time Wilkes had the car beyond and outside of the territory assigned to him as a salesman of the Biscuit Company.

Fern Jones recovered a judgment against both Wilkes and Thrice. The theory of this action is that Wilkes was an "additional assured," and that he being insolvent, Fern Jones is entitled to recover from the Insurance Company the indemnity to which Wilkes, as such an "additional assured," would have been entitled had he paid the judgment.

The cause was heard by the Chancellor on a stipulation of facts, and he gave judgment for Jones. The Insurance Company appeals, and insists that protection under the "additional assured" rider does not extend to this case, where the car had not only been diverted from the purpose for which it was placed in possession of the employee, Wilkes, by the owner, the named assured, but was being used in a manner, that is, being driven by a party, not only unauthorized by the owner, but contrary to its positive instructions, as shown by the stipulation of the parties in the record.

Appellant relies on the recent holding of this Court in *Stovall* v. *New York Indemnity Co.*, 157 Tenn. 301, construing a similar policy, and extending its coverage to a case in which the car owned by the named assured, after having come by permission of the owner into the possession of the employee, the "additional assured," was at the time of the accident being driven by him outside of his territory, and for a purpose beyond the scope of his employment and authority.

We are of opinion that the instant case is to be distinguished from the Stovall case. The language of the policy clauses covering the additional assured is much the same, there being this variance in the most pertinent

paragraph: In the Stovall case the wording is, "providing such use or operation is *with the permission* of the named assured"; while in the instant case the wording is, "but only while it (i. e. the car) is being used . . . *with the consent* of the assured named herein." While the italicized words convey much the same meaning, "consent" is perhaps more active, or affirmative, in meaning than "permission." This is not, however, determinative. The distinction in principle between the two cases is this: In the Stovall case the car, having "in the first instance" been delivered to the employee, the "additional assured," with the permission of the owner, the Court found that his subsequent use of it "was with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession." That is, the implication of permission was extended to a place or purpose not contemplated, and this ruling is decisive against appellant here, in so far as the departure of Wilkes from his prescribed route is relied on for reversal.

But here we have more, namely, a material departure, not only in place and purpose, but in use. Delivered to Wilkes for his use does not imply consent to use,— in the essential sense of operation, handling, driving by some unknown and unapproved third person. In one sense, it is true, it continued to be devoted to the use of Wilkes, but it was not he who was using it in the sense of controlling, manipulating, guiding it,—and a restriction on its use in this sense would appear to be called for by the nature of the obligation created by the indemnity contract. The element of risk underlies all forms of insurance. The insurer has a right to assume

that the risk he undertakes shall not be enlarged. The extent of the risk is the basis of all tabulated premium charges. And this is one of the forms of insurance, of which fire policies are an illustration, wherein there is a recognized personal element resting on standards of character, responsibility and competence. In this class of cases, theoretically, certainly, the insurer looks first to the standing and reputation of the name assured, and trusts him to select and delegate to responsible employees, only, the "use" or operation,—controlling, guiding, driving,—of its cars covered, and on this theory agrees to cover such "additional assured." No power passes, in the contemplation of the parties, to such an agent to delegate in turn this responsibility. Such a diversion of use can hardly be said to be impliedly with the consent of the named assured, or within the contemplation of the insurer. It is a departure too radical and foreign, and involves an unjustifiable extension of the risk covered by the contract.

It is to be borne in mind that the ruling in the Stovall case involves no such enlarging of the risk. A mere diversion of route or place of use suggests no increase of hazard. One is as liable to have an accident on one route or way as on another. But a change of driving, operating control, injects a distinctly new element.

Consistent with this construction, in the instant case the stipulation shows that this particular misuse was expressly prohibited, that it was against the instructions of this salesman "for him to permit any one to drive the car." We are unable to extend the required consent by implication to cover as "additional assured" one who has, without authority of the owner, substituted for himself a third party, conferring on him the uncon-

trolled power to inflict the injury and create the liability. This conclusion is directly supported by the holding in *Trotter* v. *Union Indemnity Co.* (C. C. A. 9), 35 Fed. (2d), 104, denying liability where the car had been turned over by the "additional assured" to a third party without apparent authority. And while, in another suit growing out of the same accident, the State Court of Washington (*Odden* v. *Union Indemnity Co.*, 72 A. L. R., 1363), liability was adjudged, that holding was rested on a finding of fact apparent on that record that the named assured, Grill, "turned said automobile over to Hickey to use and operate as his own for business and pleasure and consented to the operation of said automobile by Hickey personally *and by others.*" We italicize the pertinently distinguishing words. And this Court goes on to find that "Grill knew of such use and operation and consented thereto." In this opinion the distinction is clearly recognized. The Court approves the principle of limitation of liability to permissive use. It results that the decree of the Chancellor must be reversed and the suit dismissed.