HUNTER v. WESTERN & SOUTHERN INDEMNITY CO. et al.

Middle Section. November 30, 1935.

Petition for Certiorari denied by Supreme Court, March 7, 1936.

Felix E. Polston and J. B. Daniel, both of Nashville, for appellant Hunter.

Cate & Cate, of Nashville, for appellee insurance company.

HICKERSON, Sp. J. Mrs. Bessie Vincent carried an automobile liability insurance policy with defendant. The husband of Mrs. Vincent loaned the automobile to their nephew, Vincent McCord, to go to a dance. Vincent McCord was only 15 years old.

During an intermission at the dance, Vincent McCord and Kirkwood Trotter, a young man 25 years old, started in this car to the Banner office. Trotter was driving. On the trip complainant was struck and injured. In a suit for damages in the circuit court of Davidson county, W. D. Hunter, complainant herein, was awarded $10,000 damages against Vincent McCord and Kirkwood Trotter. Execution issued on the judgment and was returned "nulla bona."

Complainant brought this suit alleging defendant was liable for this judgment under the liability insurance policy which it had written on the automobile involved in the accident, or for the face of the policy; the policy limit being $5,000.

Defendant set up as a defense that Vincent McCord was operating the car in violation of a municipal ordinance of the city of Nashville which made it unlawful for any one under 16 years old to drive a car and that Kirkwood Trotter was operating the car without the knowledge or permission of assured or an adult member of her household; wherefore it said that complainant had no right of action against it under the terms of the policy.

The chancellor decreed in favor of defendant and dismissed complainant's bill.

Complainant's assignments of error in this court present two questions for determination: (1) That defendant, under its policy, was liable for the judgment against Vincent McCord; and, (2) that defendant, under its policy, was liable for the judgment against Kirkwood Trotter.

These propositions will be considered in the order above stated.

Section 11 of the policy provides in part: "This policy does not cover: . . . (c) while such automobile is being: . . . (2) operated by any person under the age limit fixed by law or in any event under the age of fourteen years. . . ."

At the time of the accident there was in force and effect in the city of Nashville an ordinance which reads: "No one shall drive a public licensed or business vehicle who is less than sixteen years of age, and no person incapacitated from using both feet and both hands to operate the vehicle shall be permitted to drive it, and no person shall drive an automobile, motorcycle or other mechanically propelled vehicle upon the streets of the City of Nashville who is less than sixteen years of age; provided, however, that this provision shall not apply to motor-bicycles, motor-scooters, or motor-pushers, with motors of not over two horse-power strength. 'Public licensed or business vehicle,' as used in this section, shall mean any vehicle used for commercial or business purposes."

In the case of Phoenix Indemnity Co. v. Barrett, 167 Tenn., 116, 67 S. W. (2d), 135, 136, our Supreme Court held: "With respect to the insistence that the words 'in violation of law' do not apply to this municipal ordinance, we think there can be no doubt that the chancellor was correct in following the opinion of the Supreme Court of the United States in U. S. Fidelity & G. Co. v. Guenther, 281 U. S., 34, 50 S. Ct., 165, 166, 74 L. Ed., 683 [72 A. L. R., 1064], where in this question was directly dealt with. As said by Mr. Justice Sanford in that case: 'When the words of the exclusion clause are taken in their ordinary meaning they are free from any ambiguity. . . . The plain and evident purpose of the clause was to prevent the Company from being held liable for any accident occurring while by reason of the age of the operator the automobile was being operated in violation of law.' And, further: 'the Clause uses the broad phrase "fixed by law," in which the term "law" is used in a generic sense, as meaning the rules of action or conduct duly prescribed by controlling authority, and having binding legal force; including valid municipal ordinances as well as statutes.' What is here said is equally applicable to the broad phrase, 'in violation of law,' as used in the instant contract. He cites In re Mutual L. Ins. Co., 89 N. Y., 530, wherein the court held that a street grade fixed and established by an ordinance of the city council was one 'fixed and established by law.' And see Ex parte Lawrence, 69 Cal., 608, 11 P., 217, and Ex parte Christensen, 85 Cal., 208, 24 P., 747, construing the words 'law of this state' as used in the Penal Code (Section 435) requiring a license to include a city ordinance. Also, People v. Edmonds, 15 Barb. (N. Y.), 529, applying the phrase in the Constitution of the state 'established by law' to a special law passed by a board of supervisors of a county.

"It results that the automobile was being operated in direct violation of a plain exclusion provision of the policy contract, and the decree adjudging liability against the indemnity company must be reversed, and the suit dismissed."

There can be no doubt that the policy would not have covered the judgment against Vincent McCord had he been driving the car at the time of the accident. The policy, however, defines "assured" to include "the named assured and any other person while riding in or legally operating such automobile and any other person, or organization legally responsible for its operation, provided: (a) it is being used with the permission of the named assured, or if the named assured is an individual, with the permission of an adult member of the named assured's household other than a chauffeur or domestic servant. . . ."

Complainant contends that Vincent McCord was riding in the car at the time of the accident which resulted in the judgment against him, and that he was legally responsible for its operation with the permission of the assured's husband. In the case of Stovall v. New York Indemnity Company, 157 Tenn., 301, 8 S. W. (2d), 473, 72 A. L. R., 1368, our Supreme Court, construing a similar policy, extended its coverage to a case in which the car had come into the hands of an employee with the permission of the named assured, but at the time of the accident was being driven outside of his territory and for a purpose beyond the scope of his authority. In the Stovall Case the car was being driven by the employee when the accident occurred.

After commenting on the Stovall Case, our Supreme Court in the case of American Auto Ins. Co. v. Jones, 163 Tenn., 605, 608, 45 S. W. (2d), 52, 53, said: "But here we have more, namely, a material departure, not only in place and purpose, but in use. Delivered to Wilkes for his use does not imply consent to use—in the essential sense of operation, handling, driving by some unknown and unapproved third person. In one sense, it is true, it continued to be devoted to the use of Wilkes, but it was not he who was using it in the sense of controlling, manipulating, guiding it—and a restriction on its use in this sense would appear to be called for by the nature of the obligation created by the indemnity contract. The element of risk underlies all forms of insurance. The insurer has a right to assume that the risk he undertakes shall not be enlarged. The extent of the risk is the basis of all tabulated premium charges. And this is one of the forms of insurance, of which fire policies are an illustration, wherein there is a recognized personal element resting on standards of character, responsibility, and competence. In this class of cases, theoretically, certainly, the insurer looks first to the standing and reputation of the named assured, and trusts him to select and delegate to responsible em-

ployees, only, the 'use' or operation— controlling, guiding, driving —of its cars covered, and on this theory agrees to cover such 'additional assured.' No power passes, in the contemplation of the parties, to such an agent to delegate in turn this responsibility. Such a diversion of use can hardly be said to be impliedly with the consent of the named assured, or within the contemplation of the insurer. It is a departure too radical and foreign, and involves an unjustifiable extension of the risk covered by the contract.

"It is to be borne in mind that the ruling in the Stovall Case involves no such enlarging of the risk. A mere diversion of route or place of use suggests no increase of hazard. One is as liable to have an accident on one route or way as on another. But a change of driving, operating, control, injects a distinctly new element.

"Consistent with this construction, in the instant case the stipulation shows that this particular misuse was expressly prohibited; that it was against the instructions of this salesman 'for him to permit any one to drive the car.' We are unable to extend the required consent by implication to cover as 'additional assured" one who has, without authority of the owner, substituted for himself a third party, conferring on him the uncontrolled power to inflict the injury and create the liability. This conclusion is directly supported by the holding in Trotter v. Union Indemnity Co. (C. C. A., 9), 35 F. (2d), 104, denying liability where the car had been turned over by the 'additional assured' to a third party without apparent authority."

The theory of the complainant in the Jones Case is stated by the court to be: "Fern Jones recovered a judgment against both Wilkes and Thrice. The theory of this action is that Wilkes was an 'additional assured,' and that, he being insolvent, Fern Jones is entitled to recover from the insurance company the indemnity to which Wilkes. as such an 'additional assured,' would have been entitled had he paid the judgment."

We think the principle announced in the Jones Case applies with equal force here. The husband of the named assured permitted a 15 year old boy to drive the assured's car. The boy in turn permitted Kirkwood Trotter, a stranger to the assured and her husband, to drive the car, and he was driving it when the accident occurred. Our Supreme Court set the rule, fixed the principle, and declared its reasons therefor in the Jones Case, supra, when it said: "No power passes, in the contemplation of the parties, to such an agent to delegate in turn this responsibility. Such a diversion of use can hardly be said to be impliedly with the consent of the named assured, or within the contemplation of the insurer. It is a departure too radical and foreign, and involves an unjustifiable extension of the risk covered by the contract."

594

■ The second question presented by the assignments of error is that Trotter was driving the car with proper permission and that defendant is liable on its policy because of the judgment against Trotter. The policy provides that the car must be in use "with the permission of the named assured, or if the named assured is an individual, with the permission of an adult member of the named assured's household other than a chauffeur or domestic servant, . . ." in order for the driver to be covered. Although that question was not directly presented in the Jones Case, the reasoning of the court in that case clearly shows that the court considered that no liability could be established against the defendant because of the judgment against Thrice, who was driving the automobile at the time the accident occurred with permission of the employee.

Trotter did not have the permission of the assured or of an adult member of the assured's household to drive this automobile. His permission and authority to operate the car came through Vincent McCord, a 15 year old boy, who was driving the car with the permission of assured's husband but in violation of the ordinance of the city of Nashville. McCord's use of the car was also directly prohibited by the express terms of the policy. The assured or any adult member of her household were authorized to bind defendant under the policy contract to cover any person driving the automobile with their permission, subject to certain exceptions, but this clause in the policy cannot be extended to cover a driver who does not have such permission. We are satisfied with the decree of the chancellor. All assignments of error are overruled, and the chancellor's decree is affirmed, with costs against appellant.

Faw, P. J., and DeWitt, J., concur.