Sam C. Cocos, Appellant, v. American Automobile Insurance Company, Appellee.

Gen. No. 40,386.

Opinion filed December 5, 1939.

A. H. Brown, of Chicago, for appellant; A. J. W. Appell, of Chicago, of counsel.

Eckert & Peterson, of Chicago, for appellee; A. R. Peterson and Tom Leeming, of Chicago, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

Plaintiff brought suit in the circuit court of Cook county against Bowman Dairy Company, a corporation, Edward Kaveny, Sr., and Edward Kaveny, Jr., to recover damages for injuries sustained through the alleged negligent operation of an automobile belonging to the Bowman Dairy Company. At the close of the evidence the trial court directed the jury to return a verdict of not guilty as to defendants Edward Kaveny, Sr., and Bowman Dairy Company. The jury returned a verdict finding Edward Kaveny, Jr., guilty and as-

sessing plaintiff's damages in the sum of $5,000. Judgment was entered as to both verdicts and the judgment against Edward Kaveny, Jr., remains unsatisfied. The instant case is an action to recover on an insurance policy issued by defendant to the Bowman Dairy Company. At the close of the evidence, upon motion of defendant, the jury were instructed to find defendant not guilty. Plaintiff appeals from a judgment entered upon the verdict.

No question is raised as to the pleadings. Plaintiff states that "it is plaintiff's theory of the case that defendant is liable for the amount of the judgment for which this suit is brought, by reason of the terms and provisions of the insurance policy issued by defendant to Bowman Dairy Company. The pertinent provisions of the policy are the following:

" 'Extended Coverage.

" 'That in addition to the Assured named in this policy, such insurance as is granted hereunder shall be available, in the same manner and under the same conditions and to the same extent as it is available to the Assured named herein, to any person or persons, except chauffeurs and domestic servants, while riding in or legally operating the automobile covered by this policy, and to any person, firm or corporation legally responsible for the operation thereof; but only while it is being used for the purposes specified in Statement III of the "Schedule of Statements" and with the consent of the Assured named herein, or if such Assured is an individual, of an adult member of his household who is not a chauffeur or domestic servant.' "

" 'Schedule of Statements.

" 'Statement III: The automobile is and will be used only for private pleasure and business calls.' "
Defendant concedes that "a policy of insurance con-

taining the provisions recited by plaintiff was issued by the defendant insurance company to the Bowman Dairy Company." Its theory is that "Bowman Dairy Company, . . . was the named assured in the policy issued * * *. The named assured gave consent to the use of the automobile by Edward Kaveny, Sr. who was thus included in the extended coverage of the policy as an additional insured. There is an entire absence of evidence to show that Edward Kaveny, Jr. had the consent of the named assured to operate the automobile at the time and place in question, but the evidence is conclusive that his use of the automobile was in violation of the express instructions of the named assured."

Upon the trial it was stipulated "that judgment was entered for $5,000 against Edward Kaveny, Jr. by reason of an injury growing out of the operation of a Ford coupe described in the insurance policy"; "that the co-defendants Bowman Dairy Company and Edward Kaveny, Sr. were dismissed out of the original suit"; that the automobile involved in the accident is the same automobile as is described under the policy of insurance issued by defendant to Bowman Dairy Company.

By stipulation of the parties the testimony of Kaveny, Sr., given in the original suit of plaintiff against Bowman Dairy Company, Kaveny, Sr., and Kaveny, Jr., was read in evidence. The witness testified that he had been employed by Bowman Dairy Company for thirty-nine years and was then a division manager; that he started work as a helper in the barns and running errands, and had worked up to his present position; that he was a division manager in 1930; that he had charge of about one hundred and thirty men; that he hired them and trained them in the work that they were hired to do; that he used the Ford coupe that was involved in the accident in question, in his work; that it was owned by the Dairy Company;

"Q. What instructions if any did you have from your employers as to the use of that automobile? . . . A. My instructions from the company is that I would have the exclusive rights of driving that car in the business, I used it in the business. I used it all over the territory as I was tending to the company's business"; that when he was off duty the car was kept in the garage in the rear of his home. The following then occurred: "Q. Explain how your son Edward came to be using that Ford car on that evening. A. Well, he just— Q. Christmas, 1930. A. Well, he just asked me if I would permit him to drive it to go down and see his uncle. Q. And what did you say to him? A. Well, I said all right. Q. About what time did he leave home that evening? A. Oh, as well as I remember it was some where a little after 5:00 o'clock or thereabouts. . . . I don't know whether it was five or ten minutes one way or the other. It was after five, however. Q. When he asked permission to use the Ford coupe was there anything stated as to the purpose for which he was using it? A. Well, he told me where he was going, that he wanted to go down and see his uncle on Christmas night. Q. Which uncle? A. His Uncle John. Q. Is that your wife's brother? A. My wife's brother, yes. Q. Was your son on any errand for you that evening? A. None whatever." The witness then testified that he was not the general manager of the Dairy Company; that the Company had 13 divisions and he was the division manager of one of them; that it might be better to call him a branch manager; that he hired the men and discharged them and had the general supervision of that branch; that the car in question was maintained by the Dairy Company for his exclusive use; that J. F. Phillips, a director of the Dairy Company, "over-sees our branches or divisions"; that at the time witness became a division manager the then supervisor instructed him that no one else but the witness was to drive that

car "off the premises, off the territory, nobody but me"; that nobody but the witness was to drive the car off of the territory covered by his division; that his home is not in that territory. Witness further testified: "Q. So that when you told your son on December 25, 1930 that he might take the car° to go to his Uncle John's you were violating the orders given you by this supervisor? A. I was. Yes, sir. Q. Now was your son Edward going down to his Uncle John's to bring his Uncle John or any other member of the family back to your home for the evening? A. No, sir. Q. Weren't they coming down there to spend the evening at your home? A. Not that I know of." The witness further testified that Kaveny, Jr., was employed by the Dairy Company at the Englewood division as a common laborer around the barn and the Dairy Company did not furnish him with a car; that the Englewood division was not connected with the division managed by the witness. The following then occurred: "Q. You stated that you were given an instruction by the Bowman Dairy to use the car for yourself. Now did they also at the same time tell you what uses you were to make of the car? A. Yes. Q. What were those instructions? A. Those instructions, those were to use it within my territory as I mentioned. I could send a foreman out on an errand with the car, but they could not take it. That would be in working hours. Q. Was it limited to the use of the Bowman Dairy Company business? A. Bowman Dairy Company business, and exclusively"; that "very seldom, but occasionally," when someone would run short of milk the foreman, but nobody else, would use the car in making the delivery. The foregoing is the only evidence in the case material to the determination of this appeal.

Plaintiff contends that "the trial court apparently overlooked the fact that Kaveny, Sr., was the Manager of the Bowman Dairy Company plant, and that the per-

mission given by him to Kaveny, Jr., to use the automobile, was the permission of the Bowman Dairy Company. The knowledge of the Manager was and is binding on the corporation.'' Defendant concedes that the action of the supervisor of all of the branches of the Company, who was also a director of the Company, in allowing Kaveny, Sr., to have the personal use of the automobile specified in the contract, brought Kaveny, Sr., within the additional coverage clause of the contract, but insists that under the contract and the admitted facts in the case he was not authorized to extend the coverage to his son; that the contract was between the Dairy Company and the Insurance Company, and Kaveny, Sr., could not by his acts extend the obligation of the Insurance Company beyond that provided for in the written contract; that his permission to the son to use the automobile was not an act performed in furtherance of his duties as an employee of the Dairy Company, nor was it in the interest of that Company, whereby a consent might possibly be inferred; that the permission was given on a holiday, Christmas, and the car was to be used by Kaveny, Jr., on a purely personal matter that had not the slightest connection with the business of the Dairy Company.

In view of the positive directions given Kaveny, Sr., as to the use of the car, and his admission that he violated his orders when he gave his son permission to use it for the purpose of visiting his uncle, on Christmas night, it seems idle to argue that the consent of Kaveny, Sr., was the consent of the Dairy Company and his knowledge of the transaction was the knowledge of the Dairy Company, and therefore defendant was bound under the insurance contract. ''It is the general rule, settled by an unbroken current of authority, that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal.'' (2 Mechem on Agency (2d

Ed.) p. 1384, sec. 1803.) Kaveny, Jr., was not connected with the division of which Kaveny, Sr., was division manager, and the latter had no authority over Kaveny, Jr. The permission to use the car on Christmas night was a purely personal matter between father and son.

Plaintiff contends that "the trial court erroneously construed the provisions of the insurance policy sued upon herein, and particularly with reference to the 'Extended Coverage' provision contained in said policy." The argument in support of this contention is that the trial court did not give full effect to the authority of Kaveny, Sr., over the car; that he had more authority, "so far as that automobile was concerned, than any other officer or human being connected with the Bowman Dairy Company." This argument ignores the testimony of Kaveny, Sr., that his authority over the car was limited to the use of the Dairy Company business "exclusively." What we have heretofore said as to the first contention applies with equal force to the instant one. Defendant argues that "the question here is not whether he could or did bind the Bowman Dairy Company but whether he could and did bind the insurance company under a contract to which he was not a party and in such manner that the plaintiff, also a stranger to the contract, could take some rights in the contract between the Bowman Dairy Company and the insurance company."

In support of his contention plaintiff cites the following Illinois cases: *Jefson v. London Guarantee & Accident Co., Ltd.*, 293 Ill. App. 97; *Karton v. New Amsterdam Casualty Co.*, 280 Ill. App. 201; *Jackson v. Bankers Indemnity Ins. Co.*, 277 Ill. App. 140. The three citations are what are known as deviation cases, that is, cases where the assured permits another (who thereby becomes an additional assured) to use the car for a specified purpose and that other person deviates from the purpose for which permission was given and

uses the automobile for some purpose of his own that is not within the scope of the permission given. Under such a state of facts the rule is that the status of the party operating the car is not changed because he fails to comply with the instructions of the assured, and the insurance company is held liable. After considering certain decisions of sister states also cited by plaintiff in support of the instant contention we find that each is distinguishable from the instant case upon the facts.

Defendant cites a number of cases which seem to support its position. We will refer to several of these: *American Automobile Ins. Co. v. Jones,* 163 Tenn. 605, 45 S. W. (2d) 52, involved a policy that contained the same provision as is now before us for consideration. In that case Iten Biscuit Company was the assured. Fern Jones was injured while riding as a guest by invitation of one Wilkes, an employee of the Biscuit Company, in a car owned by the Company and delivered by it to Wilkes for his use. At the time of the accident in question Wilkes was in the car but, without the knowledge of the Company, it was being driven by one Thrice, a stranger to the company. Jones recovered a judgment against Wilkes and Thrice. Plaintiff then sued to recover from the Insurance Company the indemnity to which Wilkes as an "additional assured" would have been entitled had he paid the judgment. Plaintiff recovered a judgment, but the Supreme Court of Tennessee reversed the judgment and remanded the cause with directions to dismiss the bill. Upon appeal the Insurance Company insisted that protection under the "additional assured" rider "[1] does not extend to this case, where the car had not only been diverted from the purpose for which it was placed in possession of the employee, Wilkes, by the owner, the named assured, but [2] was being used in a manner, that is, being driven by a party, not only unauthorized by the owner, but contrary to its positive instructions, as

shown by the stipulation of the parties in the record.''
The court held that appellant could not prevail as to
the deviation point, but, upon point [2], stated:

"But here we have more, namely, a material depar-
ture, not only in place and purpose, but in use. De-
livered to Wilkes for his use does not imply consent
to use—in the essential sense of operation, handling,
driving by some unknown and unapproved third per-
son. In one sense, it is true, it continued to be devoted
to the use of Wilkes, but it was not he who was using
it in the sense of controlling, manipulating, guiding it—
and a restriction on its use in this sense would appear
to be called for by the nature of the obligation created
by the indemnity contract. The element of risk under-
lies all forms of insurance. The insurer has a right to
assume that the risk he undertakes shall not be en-
larged. The extent of the risk is the basis of all tabu-
lated premium charges. And this is one of the forms
of insurance, of which fire policies are an illustration,
wherein there is a recognized personal element resting
on standards of character, responsibility, and com-
petence. In this class of cases, theoretically, certainly,
the insurer looks first to the standing and reputation
of the named assured, and trusts him to select and
delegate to responsible employees, only, the 'use' or
operation—controlling, guiding, driving—of its cars
covered, and on this theory agrees to cover such 'addi-
tional assured.' No power passes, in the contempla-
tion of the parties, to such an agent to delegate in turn
this responsibility. Such a diversion of use can hardly
be said to be impliedly with the consent of the named
assured, or within the contemplation of the insurer. It
is a departure too radical and foreign, and involves an
unjustifiable extension of the risk covered by the con-
tract.

"It is to be borne in mind that the ruling in the
*Stovall* Case [*Stovall v. New York Indemnity Co.,* 157
Tenn. 301; 8 S. W. (2d) 473, a deviation case] involves

no such enlarging of the risk. A mere diversion of route or place of use suggests no increase of hazard. One is as liable to have an accident on one route or way as on another. But a change of driving, operating control, injects a distinctly new element.

"Consistently with this construction, in the instant case the stipulation shows that this particular misuse was expressly prohibited; that it was against the instructions of this salesman 'for him to permit any one to drive the car.' We are unable to extend the required consent by implication to cover as 'additional assured' one who has, without authority of the owner, substituted for himself a third party, conferring on him the uncontrolled power to inflict the injury and create the liability. This conclusion is directly supported by the holding in *Trotter v. Union Indemnity Co.* (C. C. A. 9) 35 F. (2d) 104, denying liability where the car had been turned over by the 'additional assured' to a third party without apparent authority." The foregoing case was followed in *Hunter v. Western & Southern Indemnity Co.,* 19 Tenn. App. 589, 92 S. W. (2d) 878.

In *Card v. Commercial Casualty Ins. Co.,* 20 Tenn. App. 132, 95 S. W. (2d) 1281, the "additional assured" clause in the policy is the same as the one in the instant policy. In that case Ogilvie, the insured, the owner of the automobile in question, permitted Rollin Lasseter, the general manager of his business, "to use the car as he wished, for business or pleasure." Lasseter testified that when Ogilvie turned the car over to him he said, "Here is a car to be used by you, use it just as if it were your own." On the day of the accident in question Rollin Lasseter instructed his brother, Robert Lasseter, to drive one Card to the latter's home in the automobile covered by the insurance contract. Card had been surveying a lot belonging to Mrs. Rollin Lasseter, on which she was preparing to build a house. On the way to Card's home the automobile collided with another automobile and Card was killed.

The administratrix of Card's estate filed suit against Robert Lasseter and others to recover damages for the wrongful death of the deceased. Judgment was rendered against Robert Lasseter in the sum of $10,000. The judgment was not paid and the administratrix then filed the suit against the Insurance Company. The suit was dismissed by the trial court and the administratrix appealed. In an exhaustive opinion filed by the Tennessee court of appeals the judgment of the trial court was affirmed. In the opinion appears the following: "The 'additional assured' clause in effect gives the named assured the discretionary power to select 'additional assureds.' This discretionary power cannot be delegated to another. . . . When the car is being driven by a person without the actual permission (either express or implied) of the named assured, then the driver is not an additional assured. Even if the person is present in the car who had permission to use it (but is not driving), there is no coverage under the policy. In that case the person who was given permission is not an 'additional assured,' for the reason that the named assured must personally exercise his discretion in selecting the driver. Permission to use means permission to operate. . . . " (Citing cases.) The court, after discussing implied permission, further states: "But such 'implied permission' must be the act or conduct of the named assured. It must amount to an intended selection of the person to operate the car. No implied permission can arise merely because a man obtained possession of the car, without the knowledge of the named assured, regardless of what permission was given by other persons. Of course, the named assured could transmit his permission through an agent or in any other manner. The essential point is whether the named assured exercises his personal discretion and grants his own permission to the particular person. . . . Even if the named assured expressly authorized such person to permit other un-

named and unselected persons to drive the car, this would be unavailing as against the insurance company. Certainly such a right cannot be created by implication." (See, also, *Johnson v. O'Lalor*, 279 Mass. 10, 180 N. E. 525; *Columbia Casualty Co. v. Lyle*, 81 F. (2d) 281; *Standard Acc. Ins. Co. v. Rivet*, 89 F. (2d) 74.) The last case follows the *Lyle* case and cites (p. 77) additional authorities in support of the conclusion reached in that case.

Plaintiff calls attention to an allegation in paragraph 5 of the complaint charging that on the date of the accident Kaveny, Jr., was operating a certain motor vehicle belonging to Bowman Dairy Company with its knowledge and consent, and to defendant's answer to the allegation, which is as follows: "denies that the said defendant Edward Kaveny, Jr. was then and there using the aforesaid car with the consent of the assured, the Bowman Dairy Company, a corporation." Plaintiff argues that as defendant did not specifically deny plaintiff's allegation as to knowledge he "was relieved from making proof of the matter so admitted by the pleadings and defendant cannot now question the point settled by the pleadings." He further contends that "the knowledge of Kaveny, Sr., its manager, was and is the knowledge of the Bowman Dairy Company." It is a sufficient answer to this contention to say that under the stipulated evidence Kaveny, Sr., was entirely without authority to give consent on behalf of Bowman Dairy company to his son's use of the car. *A fortiori*, the father's consent was contrary to the specific instructions given him by the Company. The point made as to the effect of the pleadings is an afterthought, as it was not raised during the hearing in the trial court. The record shows that the trial court in his opinion stated that he found no evidence that the Bowman Dairy Company had any knowledge, actual or implied, that Kaveny, Sr., allowed the son to use the car, and counsel for plaintiff failed to call the attention of the court to the point he now makes as to the

effect of the pleadings on the question of knowledge. Had counsel called the attention of the court to that point, defendant, under the liberal rules of the new Practice Act, might have amended its answer, if it deemed it necessary to do so. In *Card v. Commercial Casualty Ins. Co., supra,* the court held that even if the named assured expressly authorized the person it permitted to use the car, "to permit other unnamed and unselected persons to drive the car, this would be unavailing as against the insurance company."

We find no merit in plaintiff's contention that the trial court erred in directing the jury to find the issues for defendant as there was sufficient evidence to warrant the submission of the case to the jury. The motion to direct a verdict was allowed at the close of plaintiff's case and all of the material facts were undisputed. We are satisfied that the court was justified in directing the jury to find the issues for defendant.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

JOHN J. SULLIVAN, P. J., and FRIEND, J., concur.