J. B. Teague et al.

*v.*

Tommie C. Tate et al.

375 S. W. 2d 840

(*Jackson,* April Term, 1963.)

Opinion filed January 8, 1964.

George O. Benton, Jackson, of counsel, Moss & Benton, Jackson, for complainants.

Sidney W. Spragins, Jackson, guardian ad litem for Tommie C. Tate.

Pierce Winningham, Jr., Jackson, for Charles Rogers Tate and Elizabeth Blankenship Tate.

Keith Short and R. Hearn Spragins, Jackson, for Federated Mutual Implement & Hardware Ins. Co.

MR. SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

On May 25, 1958, J. B. Teague permitted his son, Samuel Glenn Teague, age seventeen (17) years, to drive a certain Buick automobile belonging to J. B. Teague to a social event near Jackson, Tennessee. Later in the evening, young Teague and a friend, Tommie C. Tate, age seventeen (17) years, drove the car to Humboldt, a distance of about sixteen (16) miles from Jackson. They started the return trip to Jackson about midnight. The Teague boy was sleepy and he asked young Tate to drive. On the way from Humboldt to Jackson, while Tate was driving with Teague in the front seat

beside him asleep, Tate was involved in an accident with one Bobby D. Morris. Subsequently, Morris filed suit in the U. S. District Court, Western District of Tennessee, Eastern Division, wherein judgment was rendered against J. B. Teague, Samuel Glenn Teague and Tommie C. Tate in the amount of Five Thousand Eight Hundred Twenty-Five ($5,825.00) Dollars. The Federal Court found and held that the liability of the said J. B. Teague was that which arose under the family purpose doctrine of Tennessee.

At the time of the accident, J. B. Teague was insured under a liability policy with the Beacon Mutual Indemnity Company. After the judgment in the Federal Court and under the threat of an execution, said insurance carrier satisfied the judgment on behalf of Teague in the total amount of Six Thousand One Hundred Forty-Four Dollars and Ninety-Nine Cents ($6,144.99).

After the payment of the judgment in the Federal Court, the Beacon Mutual Indemnity Company instituted suit in the Chancery Court for Madison County against Tommie C. Tate, the driver of the automobile on the night of the accident, Charles Rogers Tate and Elizabeth Blankenship Tate, parents of Tommie C. Tate, and the Federated Mutual Implement and Hardware Insurance Company, the automobile liability carrier for the Tates. It was the insistence of the Beacon Company that Tommie C. Tate was not an additional insured under the terms of their policy of liability insurance covering the Teagues and that Tommie C. Tate, his parents and the insurance carrier were liable for the judgment paid in the U. S. District Court wherein Tommie C. Tate was a defendant and the driver of the automobile at the time of the accident.

· The Chancellor gave judgment against all defendants, holding that Tommie C. Tate *was not* an additional insured under J. B. Teague's policy. The matter was appealed to the Court of Appeals of the Western Division wherein it was held that Tommie C. Tate *was* an additional insured within the meaning of the liability policy issued by the Beacon Company and the judgment of the Chancellor was reversed. This Court granted certiorari and the matter is now before us for disposition.

The only question to be resolved by this Court is, was Tommie C. Tate an additional insured within the meaning of the liability policy issued by the Beacon Company? If we should find that he was, then the judgment of the Court of Appeals is correct. However, if we should find that Tommie C. Tate was not an additional insured under the policy issued to J. B. Teague by the Beacon Company, then the judgment of the Court of Appeals must be reversed and that of the Chancellor affirmed.

We will look first to the policy of insurance issued by the Beacon Company to J. B. Teague, owner of the Buick automobile involved in the wreck. The part of the insurance contract on which this case must turn is Section III, which reads as follows:

"III, *Definition of Insured.* (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, *provided the actual*

*use of the automobile is by the named insured or such
spouse or with the permission of either."*

The policy also contains a subrogation clause in the
event of any payment by Beacon on behalf of the in-
sured.

The issue now on which this matter must be decided
is a question of fact; that is, did Tommie C. Tate have
permission, either expressed or implied, to use the Buick
automobile of J. B. Teague on the night of the accident
to bring him within the coverage afforded by Section III
of the policy?

On the date of the accident, May 25, 1958, young Teague
was a member of his father's household, was seventeen
years of age, and had express permission to use his
father's car. We will now look to Mr. J. B. Teague's
testimony. Mr. Teague testified that on the night of the
accident he gave his son permission to use the Buick
automobile. That he understood Sammy was going to a
party that was being held prior to examinations, and to
the Teke Room on the Humboldt highway. He further
testified that he thought Sammy had a date. That on
the night in question, Sammy did not tell him, nor did
he, Mr. Teague, know who was going with Sammy, and
that as far as he knew, no one left home with Sammy.
He further testified that later in the night, he learned
of the accident and went to the hospital and there found
his son, Sammy, and Tommie Tate. Insofar as the rec-
ord shows, this was the first information that Mr. J. B.
Teague had that Tommie Tate was with Sammy at the
time of the accident.

The record shows that young Tate and Sammy Teague
were good friends and their families were friends of

long standing. Mr. Teague further testified that he never forbade the driving of his car by his son's friends, but that he never gave permission for Tommie Tate, or any other friend of his son's to drive his automobile. He stated that he did not know that Tommie Tate had ever driven his car.

Sammy Teague testified that on the night of the accident, he became sleepy and he asked his friend, Tommie Tate, to drive for him; and while Sammy was asleep in the front seat, the accident occurred.

Tommie Tate testified that upon occasion prior to the time of the accident, he had driven the Teague family car. He testified as follows:

"Q. I will ask you if, upon occasion prior to this time, you had driven the Teague family car?

"A. Yes, sir.

"Q. Would it be this Buick, or any other?

"A. Yes, sir.

"Q. Once, or several times?

"A. More than once. I couldn't say exactly now.

"Q. Do you know whether or not Mr. Teague knew about this?

"A. No, sir.

"Q. You don't know?

"A. He may have known about the truck—I mean us driving it down there, I don't know, not to myself driving, he may have known about that, but whether the car, I don't know."

·. Thus, it is for this Court to determine, under the above testimony, if Tommie C. Tate had implied permission to use the automobile of J. B. Teague.

The Petitioner, complainant below, J. B. Teague, for the use and benefit of the Beacon Mutual Indemnity Company, relies on three cases in Tennessee, *Card v. Commercial Casualty Ins. Company,* 20 Tenn.App. 132, 95 S.W.2d 1281; *American Automobile Insurance Co. v. Jones,* 163 Tenn. 605, 45 S.W.2d 52; *Messer v. American Mutual Liability Insurance Company,* 193 Tenn. 19, 241 S.W.2d 856.

In the Card case, supra, the owner of a business allowed the use of his automobile to the Manager. The car was to be used as his own with no restrictions. However, the Manager allowed his brother to use this automobile without permission from the owner and the Court of Appeals held that the brother was not an additional insured under the policy of insurance.

In the *American Automobile Insurance Company v. Jones,* supra, one Wilkes, an employee of the Iten Biscuit Company, had allowed one Thrice, a stranger to the Company, to operate the automobile which Wilkes was responsible for. Fern Jones recovered a judgment against both Wilkes and Thrice. In an effort to collect the judgment, it was contended that Wilkes was an additional assured and that he being insolvent, Jones was entitled to recover from the insurance company the indemnity to which Wilkes as such additional insured would have been entitled had he paid the judgment. The Lower Court gave judgment against the insurance company for Jones. On appeal, the company insisted that not only had Wilkes departed from the place and pur-

pose of the use of said automobile, but that same was being driven by a party not only unauthorized by the owner, but contrary to its positive instructions. This Court reversed the Chancellor and dismissed the suit.

In the case of *Messer v. American Mutual,* supra, this Court, in an opinion by the late Chief Justice Prewitt, held that "Kaisi, a person wholly unauthorized to drive the car by Mrs. Reid, was driving the car when the accident happened. Her son Don *was not even in the car.* Certainly there can be no liability on the policy in this jurisdiction."

The Defendants insist that the case at bar is different from the cases relied on by the original Complainants and that the Defendant, Tommie C. Tate, had the implied permission of J. B. Teague to use the automobile in question and, therefore, became an additional insured under the Beacon policy. It should be stated here that both of the boys, Sammy Teague and Tommie C. Tate, were licensed drivers under the laws of Tennessee. The Defendants further insist that as Tommie C. Tate was driving at the request of Sammy Teague and for the use and benefit of Sammy Teague the first permittee, that by implication he was driving with the permission of the insured, J. B. Teague. Defendants cite the following authority, part of which, the Court of Appeals quoted in its opinion:

"5A Am.Jur., Automobile Insurance, page 97:

" 'But while the majority rule is that the original permittee has no authority to delegate the permission where the initial permission is silent in such respect, this general rule is subject to qualification where the original permittee is *riding with the second permittee*

at the time of the accident of where the second per-mittee, in *using* the automobile, is serving some purpose of the original permittee. As to the first of these situations—that is, where the original permittee is *riding with the second permittee*—the rule *generally followed is that where an automobile* policy covers one who *uses* the specified automobile with the permission of the named insured, the insurance company is not relieved of liability by reason of the fact that while the *permittee was using* the automobile it was being driven by another at the time of an accident. It has been held in the great majority of cases that the permission given by the named insured to the original permittee includes, by implication, authority to delegate the *operation of the automobile* to *an agent or servant where the original permittee* is riding with the agent or servant in the automobile, and this rule has been applied in cases where an employee of the named insured was the original permittee. As to the second of the situations mentioned above—that is, where the second permittee, in using the automobile, is serving some purpose of the original permittee—the rule followed in some cases is that the initial permission given by the named insured to the original permittee includes by implication the authority to delegate the operation of the automobile to an agent or servant where the latter operates the car in the interests of the original permittee or for their mutual purposes. In other cases, however, the point of view has been taken that the initial permission given by the named insured to the original permittee to use the car does not give him authority to delegate the actual operation of the car to the second permittee even though the original per-

mittee is riding in the car driven by the second permittee or the second permittee in using the car does so in the first permittee's interest' '' (emphasis ours).

This Court sees a factual difference in the case at bar and the cases relied on by Complainants. Here, we have boys who were school mates, and fraternity brothers. Their families were friends of long standing. They used the Teague car on occasions when dating; on other occasions, they would use the Tate car. We think Mr. Teague summed up the matter when he was asked the following question:

"Q. But it wouldn't have been anything unusual to you for them to have swapped up driving, would it?

"A. I assume they do."

We think all of us, including the insurance companies, may assume with Mr. Teague, that boys seventeen or eighteen years of age out in an automobile with their girl friends will "swap up" on the driving occasionally. This problem did not exist back in the horse and buggy days, but the automobile has brought about many changes.

Under the factual situation in the case at bar, we believe the Court of Appeals reached the right decision in holding that Tommie C. Tate had the implied permission to use the J. B. Teague automobile and, therefore, became an additional insured under the Beacon policy.

We do not think this decision does violence to the cases cited by Complainant, nor do we intend to lay down the rule that will license the first permittee to select a second permittee who will, in all cases, become an addi-

tional insured. Each case should be considered on the facts presented.

Having reached the conclusion that Tommie C. Tate was an additional insured under the policy of insurance issued by the Beacon Mutual Indemnity Company to J. B. Teague, it, therefore, follows that all assignments of error are overruled and the decree of the Court of Appeals is affirmed. The costs of the causes are adjudged against the Complainants.

## On Petition to Rehear

Petitioners, J. B. Teague, et als, have filed a forceful petition to rehear in this cause wherein they insist that the Court overlooked material facts in the record and has apparently overlooked the only Tennessee case on the question of implied authority. The assumptions of the Petitioner are incorrect.

This case gave the Court great concern and much time was spent in reading and re-reading the record. The Court found none of the cases cited by either party exactly on all-fours with the case at bar.

A careful reading of the cases cited, including the case of *Howell v. Accident and Casualty Ins. Company,* 32 Tenn.App. 83, 221 S.W.2d 901, discloses that the facts in the case at bar are considerably different.

In our opinion, we were careful to point out that the second permittee in all cases does not become an additional insured under a standard liability policy, but that each case should be considered on the facts presented.

We have carefully considered this matter and we believe the Court reached the right decision; therefore, the petition to rehear must be denied.