341 F.2d 220
 Duane M. CARR, M.D., Administrator of Estate of Lauren Duane Carr, Plaintiff-Appellee,
v.
AMERICAN UNIVERSAL INSURANCE COMPANY, Defendant-Appellant.
Marie J. SIMS, Individually and as Natural Guardian and Next Friend of Reginald Sanderson Sims, a Minor, Plaintiff-Appellee,
v.
AMERICAN UNIVERSAL INSURANCE COMPANY, Defendant-Appellant.
Marie J. SIMS, Individually and as Natural Guardian and Next Friend of Reginald Sanderson Sims, a Minor, Plaintiff-Appellant,
v.
AMERICAN UNIVERSAL INSURANCE COMPANY and
Springfield-Monarch Insurance Companies, Defendants-Appellees.
 Nos. 15692-15694.
 United States Court of Appeals Sixth Circuit.
 February 10, 1965.
 
 H. Francis Stewart, Nashville, Tenn., for American Universal Ins. Co., Watkins, McGugin & Stewart, Nashville, Tenn., on the brief.
 Dunlap Cannon, Jr., Memphis, Tenn., for Duane M. Carr, D. J. Smith, Jr., Memphis, Tenn., on the brief.
 Richard H. Allen, Memphis, Tenn., for Marie J. Sims, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, Tenn., Truett & Watkins, Tallahassee, Fla., on the brief.
 Edward W. Kuhn, Memphis, Tenn., for Springfield-Monarch Ins. Companies, McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, Tenn., of counsel.
 Before WEICK, Chief Judge, and PHILLIPS and EDWARDS, Circuit Judges.
 WEICK, Chief Judge.
 
 
 1
 These appeals involve questions of conflict of laws and coverage under omnibus clauses in policies of automobile liability insurance issued to different named insureds by the two insurance companies. The insurance companies will be referred to as "American Universal" and "Springfield."
 
 
 2
 The controversy grew out of an automobile accident occurring in Nashville, Tennessee, on April 30, 1961, in which Lauren Duane Carr, the daughter of the plaintiff-administrator, received injuries which resulted in her death. Her father, as administrator of her estate, recovered judgment in the United States District Court for the Western District of Tennessee against Reginald S. Sims, a minor, for $65,000, damages for her wrongful death. Sims was the driver of the automobile in which Miss Carr was riding as a guest passenger.
 
 
 3
 The administrator then instituted an action in the District Court against American Universal and Springfield to recover on the policies of liability insurance pursuant to a provision in the policies permitting any person who has obtained judgment to recover in the same manner and to the same extent as the insured.
 
 
 4
 American Universal was the insurer of the automobile driven by Sims, title to which was registered in the name of Dickson Tire Company, a family corporation of Jacksonville, Florida.
 
 
 5
 Springfield was the insurer of an automobile (not involved in the accident) owned by Sims' mother, under a policy which extended coverage to Sims while driving other automobiles, but which contained a clause that "the insurance with respect to a non-owned automobile shall be excess insurance over any other valid and collectible insurance."
 
 
 6
 Mrs. Sims, individually and as natural guardian and next friend of Reginald S. Sims, instituted an action for declaratory judgment against the two insurance companies in the Circuit Court of the Second Judicial Circuit of Florida, Leon County, to establish coverage under the policies of insurance, and to require them to pay the judgment of $65,000. and a small judgment of $360.82 entered against him.
 
 
 7
 The insurance companies removed the action to the United States District Court for the Northern District of Florida, Tallahassee Division, on the ground of diversity of citizenship. Upon motion of American Universal, the District Court transferred the action to the United States District Court for the Western District of Tennessee, where the Carr action had been pending for over two months, and the two cases were consolidated for hearing.
 
 
 8
 The District Judge heard the cases without a jury. He adopted findings of fact and conclusions of law. He entered judgment in favor of Carr, as administrator, against American Universal in the amount of $65,000., in satisfaction of the judgment against Sims in the wrongful death action. He also entered judgment in favor of Mrs. Sims, individually and as natural guardian and next friend of Reginald S. Sims, for $360.82, in satisfaction of a judgment obtained against him in the General Sessions Court of Davidson County, for property damage sustained by the owner of the other automobile involved in the accident. He entered no judgment against Springfield because American Universal's policy of insurance provided sufficient coverage for all liability, and Springfield's policy was for any excess only. He ruled that under the law of Tennessee, the allowance of attorneys' fees was in the nature of a penalty and was against the policy of the state. He therefore did not provide for the payment of any attorneys' fees claimed by Sims.
 
 
 9
 American Universal appealed from said judgment to this Court. Mrs. Sims filed a cross-appeal from such portion of the judgment as denied her the right to recover reasonable attorneys' fees for legal services rendered to her in the declaratory judgment action.
 
 
 10
 The findings of fact of the District Judge with respect to the use of the Dickson automobile are contained in the footnote.[1]
 
 
 11
 The American Universal policy contained an omnibus clause which defined the "insured" as including the named insured and also any person while using the automobile, "provided the actual use of the automobile is by the named insured or with his permission."
 
 
 12
 Both policies of liability insurance were written and delivered in the state of Florida where each of the named insureds resided and the insurance companies were authorized to do business. Florida was also the place of residence of Reginald S. Sims.
 
 
 13
 It is the contention of American Universal that the law of Tennessee, which was the forum state and the place where the accident occurred, governs as to the liability of the insurance companies on the policies of insurance; that Sims, the second permittee, did not have express or implied authority to use the Dickson automobile; and that no recovery could be had under Tennessee law. It relied on Messer v. American Mut. Liab. Ins. Co., 193 Tenn. 19, 241 S.W.2d 856 (1951); American Auto Ins. Co. v. Jones, 163 Tenn. 605, 45 S.W.2d 52 (1932); Howell v. Accident & Cas. Ins. Co., 32 Tenn.App. 83, 221 S.W.2d 901 (1949); Hunter v. Western & Southern Indem. Co., 19 Tenn. App. 589, 92 S.W.2d 878 (1935).
 
 
 14
 The District Judge applied, and we think properly, the Tennessee conflict of laws rule and held that the liability of the insurance companies under the policies of insurance was to be governed by the lex loci contractus which was Florida. He relied on First American Nat'l Bank v. Automobile Ins. Co., 252 F.2d 62 (C.A.6, 1958); Sloan v. Jones, 192 Tenn. 400, 241 S.W.2d 506, 25 A.L.R.2d 1235 (1951); Globe & Rutgers Fire Ins. Co. v. House, 163 Tenn. 585, 45 S.W.2d 55 (1932). Other cases supporting this proposition, which is the general rule, are Northwestern Nat'l Cas. Co. v. McNulty, 307 F.2d 432 (C.A.5, 1962); Mutual Benefit Health & Acc. Ass'n v. Kennedy, 140 F.2d 24 (C.A.5, 1943); Shane v. Commercial Cas. Ins. Co., 48 F.Supp. 151 (E.D.Pa.), aff'd 132 F.2d 544 (C.A.3, 1942).
 
 
 15
 No pertinent Florida decisions dealing with the omnibus clause in a liability insurance policy, were cited to the District Court, nor to us. In the absence of relevant Florida decisions on the subject, we are nevertheless required to decide from all available data, how the courts of that state would approach and determine the question of liability of the insurance companies, giving consideration to the common law as declared by other state courts. Werthan Bag Corp. v. Agnew, 202 F.2d 119 (C.A.6, 1953).
 
 
 16
 In Florida an automobile has been held to be a dangerous instrumentality. Leonard v. Susco Car Rental, 103 So.2d 243, 244 (Fla.Ct.App.) aff'd 112 So.2d 832 (1959). Susco cited Lynch v. Walker, 159 Fla. 188, 31 So.2d 268, 271 (1947).
 
 
 17
 Florida has a Financial Responsibility Statute. 13 Fla.Stat.Ann. ch. 324. Section 324.151(1) of the statute required an owner's liability insurance policy to "insure the owner named therein and any other person as operator using such motor vehicle * * * with the express or implied permission of such owner, against loss from the liability imposed by law for damage arising out of the ownership, maintenance or use of such motor vehicle * * *"
 
 
 18
 It will be noted that the law specified that the omnibus clause shall insure a person driving with implied as well as express permission. In the present case express permission to Sims from the named insured, to drive the automobile, was not claimed. Whether or not Robert Dickson was clothed with implied authority to permit Sims to drive the automobile, was a factual question which could be determined only by a consideration of all of the evidence in the case.
 
 
 19
 The plain language of the Florida statutes does not adapt itself to any different construction.
 
 
 20
 The District Court relied on the following cases: National Grange Mut. Liab. Co. v. Metroka, 250 F.2d 933 (C.A. 3, 1958); Indiana Lumbermen's Mut. Ins. Co. v. Janes, 230 F.2d 500 (C.A.5, 1956); American Auto. Ins. Co. v. Fulcher, 201 F.2d 751 at 756 (C.A.4, 1953); Harrison v. Carroll, 139 F.2d 427 (C.A. 4, 1943).
 
 
 21
 We have previously construed onmibus clauses in liability insurance policies and have considered the common law of Tennessee and other states with respect thereto, in General Cas. Co. v. Woodby, 238 F.2d 452 (C.A.6, 1956); Branch v. United States Fid. & Guar. Co., 198 F.2d 1007 (C.A.6, 1952); Vezolles v. Home Indem. Co., 38 F.Supp. 455, 457 (W.D. Ky.) aff'd 128 F.2d 257 (C.A.6, 1942).
 
 
 22
 The District Court did not have the benefit of the recent decision of the Supreme Court of Tennessee in Teague v. Tate, 375 S.W.2d 840 (1964), which was decided after the cases had been appealed.
 
 
 23
 In that case, Teague, the owner of the automobile, gave his son, Sammy, express permission to use it. He knew that Sammy was going to a party but did not know who was going with him. Sammy and young Tate and their families were friends of long standing. Teague never forbade the driving of his car by Sammy's friends, but never gave permission to Tate or any of Sammy's friends, to drive the automobile, and did not know that Tate had ever driven it. The automobile was being driven by Tate, with the permission of Sammy, at the time of the accident. Tate had driven the automobile on other occasions.
 
 
 24
 All of the Tennessee cases construing omnibus clauses, except one, cited by American Universal in support of its contention, were considered and were held inapplicable by the Supreme Court of Tennessee. The Court said:
 
 
 25
 "The issue now on which this matter must be decided is a question of fact; that is, did Tommie C. Tate have permission, either expressed or implied, to use the Buick automobile of J. B. Teague on the night of the accident to bring him within the coverage afforded by Section III of the policy?" Id. at 841.
 
 
 26
 The Court then held that the evidence compelled the conclusion that young Tate had implied permission to drive the Teague automobile. This case, in our opinion, would permit recovery in the cases at bar under Tennessee law.
 
 
 27
 The father of young Robert Dickson testified in a deposition received in evidence in the District Court:
 
 
 28
 "* * * I talked to Bob when he left to go to school with the car, and cautioned him about driving it, not only his driving it in safety, but cautioned him about letting others drive it. I did not ever tell him not to let anyone drive it, that he could or could not."
 
 
 29
 He did allow Robert to take the 1953 Chevrolet automobile to college with him, a distance of several hundred miles from their home. During his stay at college Robert had exclusive possession and control of the automobile.
 
 
 30
 After considering the evidence, the District Court concluded:
 
 
 31
 "Entrustment of the vehicle herein to the first permittee for general unrestrained use over an extended period of time hundreds of miles distant from the residence of the named insured clothed the first permittee herein, Robert Dickson, with implied authority to use the vehicle as his own and to delegate permission of the named insured to persons of the first permittee's selection."
 
 
 32
 In our judgment, there was substantial evidence to support the finding of fact and it is not clearly erroneous. It is binding on us. Fed.R.Civ.P. 52(a); Duberstein v. Commissioner, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).
 
 
 33
 The remaining question to be decided concerns the cross-appeal of Sims. The issue is whether the District Court should have applied Florida instead of Tennessee law, in determining Sims' claim for attorneys' fees for services rendered in connection with the declaratory judgment action. The value of the legal services was stipulated at $7,000.
 
 
 34
 Florida statutes provide for attorneys' fees in an action by an insured against an insurer where recovery is had.[2]
 
 
 35
 The District Judge denied recovery of attorneys' fees on the ground that under Tennessee law they are penal in nature and it would be against public policy of the state to enforce the Florida statute. American Fid. & Cas. Co. v. Greyhound Corp., 258 F.2d 709 at 717 (C.A.5, 1958); Doggrell v. Southern Box Co., 208 F.2d 310 (C.A.6, 1953); Insurance Research Serv. Inc. v. Associates Fin. Corp., 134 F.Supp. 54 (M.D.Tenn., 1955); Paper Products Co. v. Doggrell, 195 Tenn. 581, 261 S.W.2d 127 (1953).
 
 
 36
 If the Sims case had been tried in Florida instead of Tennessee, and had resulted in a judgment in favor of Sims against the insurance companies as prayed for in the complaint, the Florida Court conceivably would have applied the Florida statute providing for the allowance of attorneys' fees.
 
 
 37
 The Sims case was not tried in Florida because it was transferred to Tennessee upon the motion of one of the insurance companies. Under such circumstance, the transfer of the case to Tennessee ought not to affect the substantive rights of Sims under Florida law. The case must be treated as if it were being tried in the transferor state. This means that the Florida law, and not the law of Tennessee, must be applied. VanDusen, U. S. District Judge v. Barrack, Administratrix, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In fairness to the District Judge, it should be pointed out that VanDusen had not been decided at the time the present cases were tried before him.
 
 
 38
 No appeal was taken from the part of the judgment in favor of Springfield regarding excess coverage, and it has become final.
 
 
 39
 The judgments in favor of Carr, Administrator, and Sims against American Universal are affirmed.
 
 
 40
 So much of the judgment as denied recovery to Sims for attorneys' fees on the ground that they may not be recovered under Tennessee law, is reversed and the cause is remanded to the District Court to determine the liability of the insurance companies for payment of Sims' claim for attorneys' fees under Florida law.
 
 
 
 Notes:
 
 
 [1]
 Findings of Fact of the District Judge:
 "3. Said vehicle was registered in the name of the Dickson Tire Company, a Florida corporation with its only office in Jacksonville, Florida. Robert Dickson, son of the controlling shareholder of the Dickson Tire Company, had been given permission by his father to drive the automobile to Nashville, Tennessee, where he was enrolled as a student in Vanderbilt University. He was to use it there during the school year. This use was with the full knowledge and consent of the Board of Directors of the Dickson Tire Company, who were all members of the Dickson family."
 "4. The permission to use the automobile was general in nature, there being no limitations or restrictions put upon its use. Robert Dickson had been cautioned by his father about driving or letting others drive, but was never instructed by anyone representing the owner, Dickson Tire Company, that others could not drive the vehicle, nor was there any express permission that others might use the automobile."
 "5. On the night of the accident, and shortly prior thereto, Robert Dickson, his date and two other couples were in Dickson's apartment. Dickson took his date home first, and upon returning, handed the car keys to the girl nearest him as he passed through on his way to bed. There were no instructions given, but Dickson knew that one of the four would drive the girls to their dormitory and that one of the boys would return the car. Both boys had driven the automobile on prior occasions with the express permission of Robert Dickson. The accident occurred shortly after the two couples left the apartment and while Reginald S. Sims was driving."
 
 
 [2]
 18A Fla.Stat.Ann. § 627.0127:
 "Upon the rendition of a judgment or decree by any of the courts of this state against an insurer in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial judge shall adjudge or decree against the insurer and in favor of the insured or beneficiary, a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had. Except, that without any prejudice or effect whatsoever as to suits relating to other kinds of insurance, no such attorney fee shall be allowed in any such suit based on a claim arising under a life insurance policy or annuity contract if such suit was commenced prior to expiration of sixty days after proof of the claim was duly filed with the insurer. Where so awarded compensation or fees of the attorney shall be included in the judgment or decree rendered in the case."