## GLENS FALLS INDEMNITY CO. v. ZURN et al.
### No. 5996.

Circuit Court of Appeals, Seventh Circuit.
Feb. 1, 1937.

Rehearing Denied March 2, 1937.

Leon B. Lamfrom and A. J. Engelhard, both of Milwaukee, Wis., for appellant.

William A. Hayes, of Milwaukee, Wis., and Albert H. Krugmeier, of Appleton, Wis., for appellees.

Before SPARKS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

This case is only a drab epilogue to one of the tragic annals of modern traffic. In a trial without a jury the District Court entered judgment in behalf of appellees against appellant upon an insurance contract issued by it to John P. Marsh covering the operation of his automobile. Appellees were the owners of judgments against one Whatley, obtained against him because of his negligence in driving the automobile on September 1, 1931. At that time William Marsh, son of the assured, and his two companions, Sheldon White and Seaborn Whatley, were driving from Chicago to the White summer home in northern Wisconsin. A collision between the car in which they were riding and another caused the deaths and other injuries for which the judgments were entered. Whatley was at the wheel at the time.

The pertinent provisions of the policy are as follows:

"It is intended by this policy to insure the named assured * * * against liability for death or injuries to persons * * * resulting from negligence in the use of such motor vehicles * * * in the business of such owner or otherwise by any person legally using the same with the permission, express or implied, of said owner.

"This policy shall automatically be extended to cover as additional assured any person * * * while riding in or legally using any such automobile, and any person * * * legally responsible for the operation thereof * * *, provided such use or operation is with the permission of the named assured or * * * with the permission of an adult member of the assured's household."

The District Court found that young Marsh and the other boys obtained from the assured permission to take and use the touring car; that they also obtained such permission from the assured's wife, an adult member of the assured's household; that Whatley was legally using the car, with the permission of the assured, the assured's wife and the son, William Marsh, an adult member of the assured's household; that William had been vested with a broad discretion as to the control, use, and management of the car and was, within the meaning of the words of the policy, an adult. Appellant contends that the evidence was insufficient to sustain the findings.

William Marsh was eighteen years of age. He and Sheldon White had been schoolmates; Whatley was a friend of White and had recently become acquainted and friendly with young Marsh. The three boys had planned a trip from Highland Park, just north of Chicago, to the summer home of the White family in northern Wisconsin. They had discussed getting the car of the father of one of them; finally young Marsh approached his father. He had previously driven the car; his father had confidence in him, considered him a good driver and trusted to his judgment, and testified that the car was

taken with his knowledge, consent, and permission. Mr. Marsh treated William as an adult member of the household, "considered him mature for his age." William requested the use of the car two or three days before the boys started. He had frequently driven it with others as companions, at least twice a month. The father usually did not know who his son's companions were, but permitted the son to go with whom and where he pleased. The father knew that three boys were going but he did not know their schedule or their itinerary. Mrs. Marsh and Mrs. White had discussed the boys' plans and understood that the three were going north together.

The boys pooled their expenses and agreed to alternate in driving. The enterprise was joint; all three sat in the front seat. The father testified that he expected the son to control and manage the car, and did not anticipate driving by either of the other two. The boys seemed to have agreed amongst themselves that the two not driving should keep the driver advised of stop signs, approaching vehicles and other matters to be observed by drivers.

We shall not recount the details of the testimony further. What we have said and other circumstances appearing in the record are convincing that the trial court had before it substantial evidence upon which to base its findings and consequent liability under the provisions of the contract, namely, that the car was used with the permission express or implied of both the assured and the assured's wife, an adult member of the family, thus extending the coverage to liability for negligence of any one of the boys when driving the car.

It is said that there was no proof that the father consented to the driving of the car by Whatley, and the trial court expressly refused to give credence to the father's testimony negativing this fact. In our opinion the truth or falsity of this statement is immaterial. The language of the policy extends the additional coverage to any person "using" the automobile "provided such use is with the permission of the named assured or with the permission of an adult member of the assured's household." The father consented to the use of this car in the joint enterprise of the three young men. He must have intended to give his son permission to direct the enterprise; the latter was clearly acting with his father's permission. True, he was not driving at the time of the accident, but he was using the car with his father's permission and in such use, availed himself of the services of his companion. It seems clear to us that the liability of the driver, under the circumstances of this case, is covered by the policy and that Judge Geiger was justified in finding the use of the car at the time of the accident was with the implied permission of the assured and that of his wife.

In Arcara v. Moresse, 258 N.Y. 211, 179 N.E. 389, the Court of Appeals had to do with the liability of the owner of a car, under the New York statute, at a time when the car was driven by one Barone, without the owner's express permission. The law of New York (Vehicle and Traffic Law [Consol.Laws, c. 71] § 59) imposes liability upon the owner of every motor vehicle for personal injuries, "resulting from negligence in the operation of such motor vehicle * * * by any person legally using or operating the same with the permission, express or implied, of such owner." The owner loaned the car to one Maggio, directing him to permit nobody else to drive the car. Though the legal question was not the same as that presented here, the reasoning of the court is convincing. Its language was as follows: "We think that Maggio was at the time 'using' the car, though Barone was driving, for Maggio 'did not abandon the car or its use when he surrendered to another the guidance of the wheel'; he was 'still the director of the enterprise, still the custodian of the instrumentality confided to his keeping, still the master of the ship.' Per Cardozo, C. J., in Grant v. Knepper, 245 N.Y. 158, 165, 156 N.E. 650, 652, 54 A.L. R. 845. We think, also, that Maggio was at the time using the car with 'the permission' of the defendant owner. True it is that, if the collision had occurred in a territory where use had been expressly proscribed by the owner, Maggio would then have been using the car without permission. Chaika v. Vandenberg, 252 N.Y. 101, 169 N.E. 103. Nor would it have been a permitted use if Maggio, against the express instructions of the owner, had employed the car to provide a pleasure trip for Barone. Psota v. Long Island R. Co., 246 N.Y. 388, 159 N.E. 180, 62 A.L.R. 1163. An owner in loaning his car may reasonably restrict the uses to which it may be put; consequently its employment for a proscribed purpose cannot be a permitted use. On the other hand, if the limiting instructions relate to the manner of opera-

tion, such as the speeding or careless pilotage of the car, though the instructions be disobeyed, nevertheless the use is with 'permission' of the owner. Maggio was not instructed that Barone should not be accepted as a guest; he was merely told that Barone must not drive. The thing forbidden related to the operation of the car, not to the use which might be made of it. We conclude that Maggio was 'using' the car with the 'permission' of the owner."

So here the thing the father says was forbidden related to the personnel of the driver of the car, not to what use might be made of it. The three boys were using the car with the permission of the owner. The judgment of the District Court is affirmed.