## HUTCHINS v. AKRON, CANTON & YOUNGSTOWN R. CO.

### No. 10414.

Circuit Court of Appeals, Sixth Circuit.

June 5, 1947.

190

Harley S. Cook, of Cleveland, Ohio (A. H. Dudnik, and Harley S. Cook, both of Cleveland, Ohio, on the brief), for appellant.

William Kelly, of Akron, Ohio (Squire, Sanders & Dempsey and J. C. Davis, all of Cleveland, Ohio, and Wise, Roetzel, Maxon, Kelly & Andress, Chester G. Wise, and William A. Kelly, all of Akron, Ohio, on the brief), for appellee.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellant, Erwin Hutchins, appeals from a judgment of the District Court sustaining a motion of appellee, a common carrier by railroad, for a directed verdict in its behalf at the close of the evidence in an action for personal injuries brought by the appellant under the Federal Employers' Liability Act. Sections 51 through 60, Title 45 U.S.C.A. No question is made about the applicability of the Act, and the sole question is whether the evidence was sufficient to take the case to the jury.

The accident complained of occurred at about 5:30 p.m. on April 9, 1945. The appellant, who lived at Medina, Ohio, had gone with other employees of the appellee to Akron, Ohio, and after completing the assigned work there at about 4:00 p.m. began the return trip from Akron to Medina accompanied by two fellow workers, Blewitt and Grimm. They were traveling, by permission, on a 4-wheel motor car, going west over the main line of the appellee. They were told by the train dispatcher to take the siding at the Barberton Belt Line to let train No. 90 pass and that he could give no definite information with regard to the Copley run. Appellant knew that the Copley run was between him and Medina and that he should look out for it. On arrival at the Copley yard they found the main line blocked by a caboose. There was a switch leading off the main

track to what was called the run-around track, by means of which the appellant could go south and west around the standing caboose and regain the main line to the west. The appellant was in charge of the operation of the motor car. He gave the main line switch key to Grimm, who threw the switch. Appellant left the main line and entered the run-around track. About 100 feet further west the run-around track was joined by a track from the southeast, known as the Minnesota Mining Track, which curved to the south at a point about 400 feet southeast of its junction with the run-around track. Nothing could be seen around this curve in the Minnesota Mining track. Before leaving the main track the appellant looked toward the Minnesota Mining track and saw nothing moving on it. He operated the motor car westward to a stop about 40 feet east of the switch connecting the run-around track with the Minnesota Mining track. This switch was aligned for the Minnesota Mining track and against the further movement of the motor car. The appellant stopped so that Grimm could go ahead and throw the switch which would permit the motor car to proceed on the run-around track. When he stopped for this switch he again looked back toward the southeast and saw nothing coming on the Minnesota Mining track. Grimm walked ahead, reached the switch, threw it against the Minnesota Mining track and in favor of the motor car, and at the same time motioned the appellant to come ahead. The appellant operated the motor car ahead at a speed of four or five miles per hour. When the front wheels had passed the switch points, but before the rear wheels had reached the points, Grimm threw the switch back into its former position against the motor car, and at the same time shouted a warning. The appellant looked back over his shoulder and saw a gondola car on the Minnesota Mining track about 10 or 15 feet behind him, traveling at a speed of 25 to 30 miles per hour and going toward the switch entrance into the run-around track. The throwing of the switch by Grimm against the rear wheels of the motor car derailed the motor car which bumped along on the ties for a short distance. The gondola car going through the open switch struck the motor car, threw it and the plaintiff off the track and continued through the run-around track on to the main track to the west, finally coming to a stop on the siding north of the main track at a point about 700 feet west of the place of the accident. In order for Grimm to throw the switch in question he was located at the lever on the south side and was facing toward the east and the Minnesota Mining track. The accident resulted in serious and permanent injuries to the appellant for which he sought damages in the amount of $50,000. The District Judge was of the opinion that the evidence showing the foregoing facts did not sufficiently sustain the allegations of negligence to permit the case to go to the jury and sustained appellee's motion for a directed verdict in its favor.

As a preliminary matter, the record shows that the appeal is taken "from a final judgment of the District Court for the Northern District of Ohio, Eastern Division, granting defendant's motion for a directed verdict, entered in this action on the 11th day of October 1946." However, neither the verdict nor a formal order sustaining the motion for a directed verdict, nor any judgment dismissing the complaint is in the record, as required by Section 75 (g), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The Designation of Contents of Record on Appeal includes "Transcript of the testimony, including defendant's motion for a directed verdict and the Court's opinion and order granting same October 11, 1946." The District Court's oral opinion and ruling, given in open court on October 10, 1946, is a part of the record. In it the District Judge after discussing the case and expressing his views stated "The motion for directed verdict will be granted," and later in addressing the jury stated that he had reached the conclusion "that there is no legal right of recovery in this case on behalf of plaintiff," and instructed the first juror to sign a directed verdict on behalf of the defendant. Section 75(g) of the Rules of Civil Procedure provides for the correction of this omission by direction of this Court that a supplemental record be furnished. Since the defect can be cor-

rected and the record shows what the judgment was to be and that such a final judgment or order was entered on October 11, 1946, and since the parties have proceeded in this appeal in agreement as to the substance and effect of such final order, we believe that for the purposes of expediting disposition of this appeal and the final disposition of the case, the appeal can be disposed of without the necessity of obtaining a supplemental record. Compare Helfer v. Corona Products, 8 Cir., 127 F.2d 612, 615; Lemley v. Christophersen, 5 Cir., 150 F.2d 291, 292.

Liability of the appellee for damages to the appellant, its employee, depends upon negligence on the part of the carrier which causes the injuries complained of. Contributory negligence on the part of the employee does not bar a recovery, but in such a case the damages are diminished by the jury in proportion to the amount of negligence attributable to such employee. Sections 51 and 53, Title 45 U.S.C.A.; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967. The complaint charged negligence on the part of the appellee in five respects: (1) That the appellee failed to provide plaintiff with a reasonably safe place in which to work; (2) that appellee threw the cross-over switch before the motor car had completely crossed the switch, thus derailing it; (3) and (4) in failing to control the movements of the gondola car, and in operating the gondola car so as to result in or cause a collision with the motor car, and (5) in failing to establish proper rules and signals whereby vehicles could operate over its tracks without colliding with each other. The appellee denied any negligence on its part and charged that appellant's injuries were directly caused and contributed to by appellant's own negligence.

We agree with the District Judge's ruling on the 1st, 3rd, 4th and 5th specifications of negligence. The evidence fails in any way to substantiate either the charge that appellee failed to provide the appellant with a reasonably safe place in which to work, that the gondola car was operated negligently, or that the appellee failed to establish proper rules and signals for the operation of vehicles upon its tracks. Liability, if it exists, depends upon the actions of Grimm at the switch. On this phase of the case, the complaint only charges that Grimm threw the cross-over switch before the motor car had completely crossed the switch, while the appellant relies upon the actions of Grimm in opening the switch and signaling him to come forward. The evidence on this point was admitted without objection. When issues not raised by the pleadings are tried by consent of the parties, they are treated as if they had been raised in the pleadings, and failure to amend the pleadings to conform to the evidence does not affect the result of the trial. Rule 15(b), Federal Rules of Civil Procedure; Continental Illinois Nat. Bank & Trust Co. v. Ehrhart, 6 Cir., 127 F.2d 341.

Appellee's liability "is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." Tiller v. Atlantic Coast Line R. Co., supra, (318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610, 143 A.L.R. 967). Where the evidence in relation to the facts is that from which fair-minded men may draw different inferences, the case should go to the jury. It is immaterial that the Court might draw a different inference from that drawn by the jury or feel that a conclusion different from that found by the jury is more reasonable. If the conclusion of the jury has an evidentiary basis, although contrary to the conclusion of the Court, its finding is controlling. Ellis v. Union Pacific R. R. Co., 329 U.S. 649, 67 S.Ct. 598; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520; Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916; Highfill v. Louisville & Nashville R. R. Co., 6 Cir., 154 F.2d 874. Under the facts as above given, the jury could have reasonably found that Grimm was negligent in opening the switch for the motor car and signalling it to proceed,

and in continuing to maintain that signal in effect, when the gondola car was approaching from a near distance at a rate of speed of from 25 to 30 miles per hour. Illinois Cent. R. Co. v. Ruoff, 141 Ky. 623, 625, 133 S.W. 553. It is no answer to say that Grimm did not see the gondola car, and that the appellant himself failed to see it. Grimm was acting in a capacity where it was his duty to see it if it was visible and approaching. The physical facts would support the conclusion that it was within the 400 feet of visible track before the motor car covered the 40 feet which carried it into the switch. The motor car, traveling at slow speed, could have been stopped by Grimm, after proceeding part of the way and before reaching the switch, upon Grimm becoming aware of the approach of the gondola car. Grimm was also facing toward the track on which the gondola car was traveling, while the appellant was facing, partly at least, in the other direction and engaged in the operation of his own car. In any event, negligent failure on the part of the appellant to observe the rapid approach of the gondola car does not bar his recovery if Grimm was also negligent in the same respect. The jury also could have reasonably concluded that Grimm was negligent in throwing the switch against the motor car before its rear wheels had passed over the switch, which caused it to be derailed. Such action may or may not have been justified under the emergency presented. Tozier v. Haverhill, etc. S. R. 187 Mass. 179, 72 N.E. 953; compare Annotation 27 A.L.R. 1197, 1199. We do not believe that the District Judge's conclusion that the derailment had no effect upon the fact of the collision, in that the collision would have occurred whether the motor car would or would not have been derailed, is the only reasonable conclusion from the facts. It is true that the collision would have occurred regardless of the derailment of the motor car if the switch was open to the gondola car. Its greater speed would have caused it to catch up with and strike the motor car from the rear. But if the switch had been kept closed to the gondola car, it is reasonable to conclude that the motor car would have proceeded on its way without derailment and that the gondola car would have been derailed and stopped by the closed switch without colliding with the motor car. At the time of the throwing of the switch the gondola car was about 10 to 15 feet behind the motor car. Although reasonable minds might differ about these possibilities, yet such conclusions on the part of the jury would not be unreasonable.

We think that the evidence presented on the question of negligence on the part of the appellee should have been submitted to the jury. Ellis v. Union Pacific R. R. Co., supra; Keith v. The Wheeling & Lake Erie Ry. Co., 6 Cir., 160 F.2d 654. The judgment of the lower court is accordingly reversed for further proceedings consistent with the views expressed herein.