**WISE et al. v. OHIO CASUALTY INS. CO.**

Civ. A. No. 1884.

United States District Court
W. D. Kentucky at Louisville.

Jan. 29, 1951.

A. J. Deindoerfer and Davis, Boehl, Viser & Marcus, all of Louisville, Ky., for plaintiff.

Robert P. Hobson and Woodward, Hobson & Fulton, all of Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was instituted by the plaintiffs, Kathryn Wise and Howard G. Wise, residents of Louisville, Kentucky, against defendant, Ohio Casualty Insurance Company, an Ohio corporation, seeking judgment in favor of Kathryn Wise for $19,158.00 and for Howard G. Wise in the sum of $585.00, with interest from February 14, 1950, the amount of judgments in favor of the plaintiffs, as respectively named which they had recovered in the Jefferson Circuit Court at Louisville, Kentucky, against Joseph Edward Scamahorn.

The amount of recovery by Kathryn Wise is alleged to have been for personal juries and that to Howard G. Wise, damage to an automobile in the sum of $285.00 and $300.00 for loss of consortium, all of which damage arose out of a collision between the automobile driven by Joseph E. Scamahorn and the automobile in which the plaintiffs Wise were riding and which collision occurred September 29, 1947.

It is claimed that the automobile driven by Scamahorn was owned by Alma Woods, and that at the time of the accident, Joseph P. Woods, her husband, was in the car and that Woods and Scamahorn were using same with the permission of Alma Woods; that the automobile owned by Alma Woods was covered by a policy of indemnity liability insurance containing a clause commonly referred to now as the "Omnibus Clause" and which in the policy sued on is as follows—

"Definition of 'Insured'. The unqualified word 'insured' whenever used in the bodily injury liability and property damage liability coverages and in other parts of this policy, when applicable to such coverages, includes the Named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the Named Insured The insurance with respect to any person or organization other than the Named Insured does not apply:

"(a) to injury to or death of any person who is a Named Insured;

"(b) with respect to the automobile while used with any trailer not covered by like insurance in the Company; or with respect to any trailer covered by this policy while used with any automobile not covered by like insurance in the Company.

"(c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any accident arising out of the operation thereof.

"(d) to any employee with respect to injury to or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

The case was tried to the Court without a jury.

The Court finds the following facts from the evidence heard at the trial—

1. September 29, 1947, Alma Woods and Joseph P. Woods were husband and wife and resided in New Haven, Nelson County, Kentucky.

Alma Woods was the registered owner of a 1946 Model Ford, Sedan, covered by policy of liability insurance, issued by the defendant Ohio Casualty Insurance Company January 2, 1947, and in force September 29, 1947, containing the following limits of liability—for each person $5,000 and for each accident $10,000; for property damage $5,000 for each accident.

The purposes for which the automobile was to be used were declared as pleasure and business. The policy contained the Omnibus Clause quoted above.

2. The primary use of the car was by Alma Woods as transportation to and from her home in New Haven to her place of work in Bardstown, a distance of approximately nine miles. Alma Woods testified with respect to the use of the automobile by her husband Joseph P. Woods as follows—

"92 Q. Did you know when he took the car away? A. Yes, I seen him when he drove off in it.

"93 Q. You registered no objection to his taking the car at the time?

"94 Q. Did you try? A. No, I didn't see him until he got out on the road.

"95 Q. Did you have the car locked? A. No sir.

"96 Q. You have stated already that your husband did take the car out with your permission? A. Yes sir.

"97 Q. Was this situation any different at all from all those other times? A. Well, he would drive down the road many a time and wouldn't be gone long.

"98 Q. On this occasion, it was all right if he took the car out? A. Yes, sir.

"99 Q. As your husband, he felt he had that privilege? A. Yes sir."

On the evening of September 29, 1947, Alma Woods returned from her work, parking the automobile in the yard at the rear of her home and left the keys in the car. Joseph P. Woods took the car shortly thereafter, not telling Alma Woods where he was going, the mission on which he was going or when he expected to return.

3. He drove the automobile a distance of approximately three miles, where he met the defendant Joseph E. Scamahorn, who had previously ridden with Woods and who was invited by Woods on that occasion to go with him. They drove to a tavern where they drank some beer and where they remained for approximately thirty minutes. Upon leaving the tavern, Woods asked Scamahorn to drive the car, which the latter did, and they started for Louisville, on a mission, which is described in the evidence as "just fooling around together" and to have a good time.

4. En route from Bardstown to Louisville, a distance of approximately forty miles, Scamahorn continued to drive and Woods went to sleep. Upon reaching Louisville, Scamahorn stopped at some place, described as on East Walnut Street, and got some whiskey and placed it in the automobile and they then drove from the address on Walnut Street to a tavern on Cedar Street, where Scamahorn stopped for the alleged purpose of getting some beer to drink.

Woods had awakened after they had left the address on Walnut Street.

There is no evidence that Woods knew that Scamahorn had placed in the automobile the moonshine whiskey.

When they stopped at the tavern on Cedar Street, Agents of the Federal Alcohol Tax Unit pulled up beside the car and Scamahorn recognizing them, pulled away. They drove down Cedar Street to Twenty-Sixth, where they turned and were proceeding on Twenty-Sixth Street toward Jefferson, traveling at a high rate of speed estimated to be from 80 to 85 miles per hour. At the intersection of Twenty-Sixth and Jefferson Streets the traffic light showed red to traffic proceeding across Jefferson on Twenty-Sixth, but Scamahorn was unable to stop the car and in crossing the intersection crashed into the side of the automobile owned by Howard Wise, which was proceeding East on Jefferson Street, damaging the car and inflicting injuries to the plaintiff Mrs. Kathryn Wise, an occupant of the car.

Both Woods and Scamahorn were arrested, placed in jail and afterwards plead guilty to charges of possessing and transporting untaxpaid distilled spirits and were each sentenced and afterwards served a term in the penitentiary on their guilty pleas.

The automobile was confiscated in a libel proceeding.

5. Executions were issued against Scamahorn on the judgments obtained in the Jefferson Circuit Court and were duly re-

turned "no property found". This action resulted.

### Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter.

■ 11. The Law of Kentucky controls in this case. Yorkshire Indemnity Co. of New York v. Collier, 6 Cir., 172 F.2d 116; Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The Court of Appeals of this Circuit, since the decision in Erie Railroad case has considered this question in two cases, which the Court of Appeals said in the Yorkshire Indemnity case are not in conflict with the law of Kentucky and it would therefore appear that a proper application of the law, as determined by our Court of Appeals, to the facts in this case at bar should produce the proper decision.

■ In the first case decided in 1941— Vezolles v. Home Indemnity Co. of New York, 38 F.Supp. 455, 459, this Court, Circuit Judge Miller, then Judge, thus construed the purpose of the Omnibus Clause —"In my opinion the purpose of the omnibus clause was to extend the liability insurance coverage to a person other than the owner who had the possession and use of the car with the permission of the owner for a somewhat limited period of time, without arbitrary and definite restrictions as to just what could be or what could not be done with the car during that period of time. The time element during which the use is permitted by the owner is in my opinion the element to be stressed rather than the particular use to which the car is put, *so long as the particular use does not vary materially from the contemplated or usual use of a car under similar conditions.*" (Emphasis added.)

This case was affirmed in a per curiam opinion, 6 Cir., 128 P.2d 257.

Later, in 1949, our Circuit Court affirmed judgment of this Court in the case of Yorkshire Indemnity Co. of New York v. Collier, supra, and quoted with approval the above excerpt from Judge Miller's opinion in the Vezolles case.

In the case at bar, there could be little doubt that Woods, the first permittee in the use of the car, had the implied permission of his wife, the owner of the car, to use it. The implication of the right to use arises from the testimony both of Woods and his wife, showing a course of conduct and relationship between them indicating mutual acquiescence and lack of objection. Thus, as will appear from the statement of the Court of Appeals of the Fourth Circuit in Jordan v. Shelby Mutual Plate Glass & Casualty Co., 142 F.2d 52 and the Annotation in 5 A.L.R.2d 600–602, and other numerous decisions, a comprehensive permission is much more directly to be assumed where the automobile insured is for social or non-business purposes than where the relationship of master and servant exists and the car is for business purposes. In the entrustment of an automobile to another for non-business purposes, there usually exists between the owner and the bailee, the relationship of kinship, friendship or family relationship.

■ It may therefore be stated as the law, at least in the majority of cases, that the original permittee has the implied authority to delegate to another, especially in those cases where the original permittee is a passenger in the car at the time of the accident.

■ It is therefore concluded that Joseph Woods, the husband, was using his wife's car with her implied consent at the time of the accident, although the actual and manual operation of the automobile was in charge of Scamahorn. See American Automobile Insurance Co. v. Taylor, D.C.Ill., 52 F.Supp. 601; Brown v. Kennedy, Ohio App., 49 N.E.2d 417; Glens Falls Idemnity Co. v. Zurn, 7 Cir., 87 F.2d 988; Annotations in 160 A.L.R. 1207.

There was also absent from this implied permission from the owner of the car to her husband, the first permittee, any arbitrary or definite restrictions as to just what could or what could not be done with the car during that period of time.

The important time element, as stressed by Judge Miller in the Vezolles opinion, was not sufficiently long as to justify any implication of violation of the implied consent.

Wood took the car between four and four-thirty in the afternoon and the accident occurred late that night. It does not appear that he had theretofore used the car for any business purposes and his explanation of the purpose of his trip with Scamahorn to Louisville—that they were going to "fool around" or "have a big time" is indicated as the usual purpose for which he would desire or usually use the car. However, the last limitation in the rule of the Vezolles case, the portion emphasized in the above quotation from that case "so long as the particular use does not vary materially from the contemplated or usual use of a car under similar conditions" raises a question which this Court thinks should preclude Scamahorn from coming within the meaning of the omnibus clause as an "additional insured".

There is no evidence in the case that Woods agreed that Scamahorn might use the car in the unlawful transportation of non-taxpaid whiskey. There can be no inference that Woods agreed that such use might be made of the car, for both he and Scamahorn are positive in their testimony that Woods was asleep at the time Scamahorn stopped at the address unknown to him on Walnut Street and loaded the contraband whiskey in the automobile. Woods' first knowledge of this cargo in the car was when the Internal Revenue Agents drove up at the tavern on Cedar Street when Woods had stopped for "another beer", at which time Scamahorn undertook to escape with the car.

It is unnecessary to decide in this case whether Woods would have had the implied authority from his wife to authorize this use of the car, because the testimony in the case is that he had no knowledge whatever of the contemplated or actual use of the car for any purpose other than for "fooling around" or "having a big time" in Louisville.

111. This use of the car was not such as might be considered normal or that to which the owner, if consulted when this particular additional use was made of the car, would have consented, as was true in the Vezolles case.

It was not a minor deviation, such as that in the Yorkshire Indemnity Co. v. Collier case. It was an unlawful use which subjected the car, if apprehended, to confiscation by the Government, and this actually resulted.

It cannot be implied that Mrs. Woods would have agreed to this use of the car. The fact that Scamahorn failed to awaken Woods and secure permission for this unlawful use authorizes the presumption that Scamahorn knew Woods would not have agreed to it. It cannot, therefore, be reasonably said that the "contemplated or actual use" of this automobile at the time of the accident was with the express or implied consent of the owner.

The case of Hawkeye Casualty Co. v. Western Underwriters Association, D.C. Idaho, 53 F.Supp. 256, supports this view. In that case, the named insured entrusted his automobile to a friend to take two girls home and the friend entrusted the driving over to one of the girls who had no driver's license. The girl was held not to be an "additional insured" within the terms of the omnibus clause.

See also Kneeland v. Bernardi, 317 Mass. 517, 58 N.E.2d 823, in which it was held that the permission from the owner to the first permittee did not embrace a practice drive by an unlicensed novice as the operator. In this case, the first permitted was an occupant of the car at the time the accident occurred.

■ It is therefore the conclusion of the Court that Scamahorn was not an additional insured under the indemnity policy issued by the defendant, Ohio Casualty Insurance Company. It follows that the petition of the plaintiffs Kathryn Wise and Howard G. Wise should be dismissed.

Defendant's Counsel will submit judgment in conformity herewith, upon notice to Plaintiff's Counsel.