## MARYLAND CASUALTY COMPANY
### v.

**Robert S. MARSHBANK; Robert S. Marshbank, Jr., a minor; Charles N. Hoak, Jr., a minor; Robert H. Stover and Ruth E. Stover, his wife; Mary Beaver, a minor; Wayne Shoemaker; Edward Manning; George E. DeVall and Elizabeth J. DeVall, his wife; John Conn; Robert Washington; Estate of Mary Stover.**

### Civ. A. No. 5022.

United States District Court,
M. D. Pennsylvania.

Feb. 18, 1955.

Metzger & Wickersham, Harrisburg, Pa., by F. Brewster Wickersham, Edward E. Knauss, III, Harrisburg, Pa., for plaintiff.

W. Milton Hargest, Jr., Harrisburg, Pa., for Robert S. Marshbank and Robert S. Marshbank, Jr.

Myers & Myers, Lemoyne, Pa., for Robert H. Stover, Ruth E. Stover and Estate of Mary Stover.

Shelley & Reynolds, Harrisburg, Pa., by William W. Lipsitt, Harrisburg, Pa., for Charles N. Hoak, Jr.

Thomas C. Zerbe, Harrisburg, Pa., for Mary Beaver.

FOLLMER, District Judge.

This matter is before the Court on complaint of Maryland Casualty Company requesting a Declaratory Judgment as to whether the policy of insurance written by it covering the Dodge automobile and Robert S. Marshbank as owner thereof covers Charles N. Hoak, Jr., who was driving the said automobile on Route 641, Cumberland County, Pennsylvania, on May 15, 1954, at the time of a collision with other vehicles.

On the basis of the evidence educed the Court makes the following:

### Findings of Fact

1. Plaintiff, Maryland Casualty Company, is an insurance corporation organized and existing under the laws of the State of Maryland having its principal place of business in Baltimore, Maryland.

2. All the defendants including Robert S. Marshbank, Robert S. Marshbank, Jr., Charles N. Hoak, Jr., Robert H. Stover, and Ruth Stover, his wife, Mary Beaver, a minor, and the Estate of Mary Stover, deceased, are residents of the Commonwealth of Pennsylvania.

3. Defendant Robert H. Stover, subsequent to the institution of these proceedings, was appointed Administrator of the Estate of Mary Stover his daughter, deceased, by the Orphans' Court of Dauphin County, Pennsylvania, after which appointment he entered an appearance as Administrator and adopted the Answer which he had filed as an individual.

4. Plaintiff, Maryland Casualty Company, issued its Automobile Liability and Physical Damage Policy 25–778263 effective March 21, 1954 to March 21, 1955 to the defendant, Robert S. Marsbank, 221 S. 19th Street, Harrisburg, Pennsylvania, as the named insured, covering 1951 Dodge sedan automobile Serial No. 31824831 owned by him.

(The policy of insurance was written in the name of Robert S. Marsbank, who is the identical person herein properly referred to as Robert S. Marshbank or as Robert S. Marshbank, Sr.)

5. According to the provisions of the said policy as originally issued the insurance afforded coverage to the insured, Robert S. Marsbank, defendant, for: "A. Bodily Injury Liability, Manual Class 1B—Limits of Liability $10,000.00 each person $20,000.00 each accident, Premium $19.20" and "B. Property Damage Liability, Limits of Liability $5,000.00 each accident, Premium $17.-00".

6. Rating information sheet attached to the policy carries this definition:

"Class 1B means—the automobile is customarily used in the course of driving to or from work and the distance driven is less than 10 road miles one-way, and

"there is no operator of the automobile under 25 years of age resident in the named insured's household or employed as a chauffeur of the automobile, and

"use of the automobile is not required by or customarily involved in the occupational duties of any person."

7. At the time of the issuance of said policy, the assured and defendant herein, Robert S. Marshbank, had a son, Robert S. Marshbank, Jr., also defendant herein, 17 years of age, who prior to April 10, 1954, became 18 years of age.

8. Effective April 10, 1954, plaintiff issued to its assured, Robert S. Marsbank, its "Amendment Of Declarations Endorsement No. 2", whereby, under Section I–h. "General Amendments" the policy was amended as follows: "Manual Class to read 2A Coverages A.B.C."

for which an additional premium of $18.81 was charged and paid by the assured.

9. Rating information sheet attached to the policy carries this definition (quoting only the pertinent portion thereof):

"Class 2A * * * means—the operators of the automobile are under 25 years and are not owners or principal operators of the automobile; * * *."

10. Insuring agreements of said policy contain among other things the following:

"III. Definition of Insured With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *."

11. The name of Robert S. Marshbank, Jr., defendant, does not appear in said policy of insurance as a "named insured."

12. On May 15, 1954, at the Marshbank home at 221 South 19th Street, Harrisburg, Pennsylvania, Robert S. Marshbank, Jr., with Charles N. Hoak, Jr., present, told Robert S. Marshbank, Sr., the owner of the said Dodge automobile, that he and Charles wanted to take Mary Stover and Mary Beaver to the movies and requested the permission of Robert S. Marshbank, Sr., to use the said automobile for that purpose.

13. Robert S. Marshbank, Sr., gave his permission for the use of the said Dodge automobile by his son, Robert S. Marshbank, Jr., and Charles N. Hoak, Jr., for the purpose of their request.

14. At the time such permission was given to use the said automobile to take the girls to the movies, nothing was said as to who should drive the car.

15. Robert S. Marshbank, Sr., in giving permission for the use of the said automobile, left it up to his son to determine who should drive it.

16. At the time he gave his permission for the use of his said automobile, Robert S. Marshbank, Sr., knew that his son, Robert S. Marshbank, Jr., and Charles N. Hoak, Jr., intended to take Mary Stover and Mary Beaver to the movies.

17. Robert S. Marshbank, Jr., drove the car away from the Marshbank home after permission to use the car had been given by the owner and assured, Robert S. Marshbank, Sr., and Charles N. Hoak, Jr., was with him in the car.

18. Later Charles N. Hoak, Jr., drove said automobile with the consent and permission of Robert S. Marshbank, Jr., and in his presence, with Mary Stover and Mary Beaver as passengers, westwardly on Route 641 in Cumberland County, Pennsylvania, intending to go to a movie at Carlisle.

19. At or about 8:15 P.M., while the said Charles N. Hoak, Jr., was driving said automobile westwardly on Route 641 in Cumberland County, approximately two miles east of Carlisle, a collision occurred involving the said automobile of Robert S. Marshbank, Sr., the automobile owned by Elizabeth J. DeVall and operated by her husband, George DeVall, and the automobile owned and operated by Wayne Shoemaker.

20. As a result of said collision, Mary Stover, Mary Beaver, Robert S. Marshbank, Jr., and Charles N. Hoak, Jr., were injured and the said Mary Stover subsequently died because of her injuries.

21. At the time and place of said collision Charles N. Hoak, Jr., was actually using said automobile with the permission of the owner, Robert S. Marshbank, Sr., for the specific purpose for which permission had been given.

### Discussion

The assured in this case, Robert S. Marshbank, Sr., consented to the use of his car by his son, Robert S. Marshbank, Jr., and his friend, Charles N. Hoak, Jr., for the express purpose of taking Mary Stover and Mary Beaver to Car-

lisle, Pennsylvania, to attend a moving picture show. He gave no instruction as to who was to drive the car, nor did he place any prohibition on anyone's driving the car; in his own words "I left that up to my boy". There was not the slightest deviation in the use of the car from the permission granted by the assured. The car was used for the precise purpose for which and the precise passengers to which the permission was granted.

Plaintiff rests its case on Aetna Casualty & Surety Co. v. De Maison, 3 Cir., 213 F.2d 826, 831. In my opinion the instant case is clearly distinguishable from the De Maison case. In the latter, the son Emil Schick, Jr., an adult, alone, asked his father, Emil Schick, Sr., for permission to use the latter's car to go to a moving picture theatre at Jenkintown, Pennsylvania; permission was granted as requested. The son drove the car to an Inn in Ardsley, three miles distant from Jenkintown, where he met some friends including a Mrs. Leona De Maison, when it was decided among the group that they would go to a diner in Willow Grove, three or four miles distant. Mrs. De Maison, with Emil Jr. in the car beside her, drove the Schick car from the Inn at Ardsley and on the way to Willow Grove she became involved in an accident with a parked automobile.

In the De Maison case the Court said, inter alia:

> "The Supreme Court of Pennsylvania has had occasion to consider problems of insurance liability when an automobile is involved in an accident while being operated by one other than the insured owner.
>
> "In doing so it has laid down these principles: (1) 'there is no * * * liability if at the time of the accident the car is being driven at a time or place or for a purpose not authorized by the insured'; (2) permission by the insured owner to one to use his car may be express or implied; (3) the word 'permission' is to be construed as permission to use the car in a specified manner and for a specified purpose and where the policy provides ' "the *actual* use is

with the permission of the Named Insured" ' the words 'actual use' are to be construed as ' "the particular use" '; (4) 'The *use or operation* * * * with the permission of the named assured" *refers to the time of the casualty and not to the time of granting consent* * * *' and 'Where the owner allows another the use of his car for a specific purpose, *restriction to such purpose is clearly implied. Express permission for a given purpose does not imply permission for all purposes.*' "

Clearly in that case the car was driven "at a place" and "for a purpose not authorized by the assured"; there certainly was no permission express or implied by the assured to Mrs. De Maison to use the car, she was not only not present when the request was made by the son of the father, so far as the record goes, she was not even in the thinking of the father.

Here, I think, is a significant bit of testimony in the instant case. On direct examination of Marshbank, Sr., appears this question and answer:

> "Q. Prior to the happening of the accident, did you know that Charles N. Hoak, Jr., was driving this car —prior to the accident? A. I don't know. *He had a license.*" (Emphasis supplied.)

The son, Marshbank, Jr., in company with Hoak, Jr., requested permission of Marshbank, Sr., to use the latter's car to go to a specific place, for a specific purpose, the two boys to be accompanied by two named girls. Permission was granted by the father knowing that both boys were licensed drivers and content to leave the matter of the operation of the car to his son. There was not the slightest deviation in the use made of the car.

In the De Maison case the Court did say,

> "We are of the opinion that in Pennsylvania one to whom insured has given permission to use an automobile has no authority to delegate such permission to another so as to make the latter an additional in-

sured, and that permission to use an automobile does not in itself, by implication, include an authority to delegate such permission to a third person."

On the other hand the Court quoted from Section V, subsection b.1, 160 A.L.R., page 1213, as follows:

"'It has been held in the great majority of cases that the initial permission given by the named assured to the original permittee includes, by implication, authority to delegate the operation of the automobile to an agent or servant where the original permittee is riding with the agent or servant in the car.'"

After noting that "the cases cited by the textwriter as authority for the broad and sweeping statements which he has made are either wholly inapposite, distinguishable or in fact directly to the contrary", the Court does go on to cite cases where the second permittee was held to be an additional insured. Then follows this comment:

"Likewise in the following cases these special factors existed: In Glens Falls Indemnity Co. v. Zurn, 7 Cir., 1937, 87 F.2d 988, the named insured had consented to the use of his car in a *joint enterprise* which was being carried out at the time of the accident; * * *."

Marshbank, Sr., consented to the use of his car in a joint enterprise to be carried out by his son and Hoak, Jr., and that joint enterprise was being carried out to the letter when the accident occurred.

We need not concern ourselves here as to whether or not there was any delegation of authority. In one sentence the omnibus clause of the policy in suit uses the following words: "using", "use", and "actual use".

It is admitted that Marshbank, Sr., gave to his son, Marshbank, Jr., permission to use his car for the specific purpose indicated, and the son did so make use of the car personally. There was no delegation of the use. Marshbank, Sr., also, if not in express words, certainly by implication, gave the same permission to Hoak, Jr., as he was present when the request was made and it was made crystal clear to the father that the son and Hoak, Jr., desired the use of the car for the purpose indicated.

In Brown v. Kennedy, 1943, 141 Ohio St. 457, 48 N.E.2d 857, 859, in dealing with a similar coverage the Court said:

"The principal question to be decided here is whether the term 'using' in the insurance policy involved in this case is to be construed as having the limited meaning of driving or operating or is to be given its ordinary signification.

"Under the terms of the policy any person 'using' the automobile mentioned in the policy with the permission of the named insured becomes an insured whom the insurance company is bound to defend and 'to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages.'

* * * * * *

"The insurer did not choose to limit its liability to one who operates or drives the automobile but selected a wider term and agreed to insure anyone who used the car with permission."

Finally, in addition to the express permission granted by Marshbank, Sr., the owner, to Marshbank, Jr., and Hoak, Jr., to use the car and the express permission to Marshbank, Jr., to drive the car, I find solid basis in fact for an implied permission from Marshbank, Sr., to Hoak, Jr., to drive the car.[1]

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this cause of action.

---

1. Conrad v. Duffin, 158 Pa.Super. 305, 44 A.2d 770; Aetna Casualty and Surety Co. v. Dé Maison, 3 Cir., 213 F.2d 826; 45 C.J.S., Insurance, § 829c(2) (b)aa.

2. Robert S. Marshbank, Jr., and Charles N. Hoak, Jr., were using the automobile in question in a joint enterprise for a common purpose with the express permission of the owner, Robert S. Marshbank, Sr.

3. Charles N. Hoak, Jr., was using said automobile with the express permission of the owner and was driving it with the implied permission of the owner.

4. Robert S. Marshbank, Jr., was an additional assured within the provisions of Policy 25–778263 issued by Maryland Casualty Company to Robert S. Marsbank, the identical person herein referred to as Robert S. Marshbank, Sr.

5. Charles N. Hoak, Jr., was an additional assured within the provisions of Policy 25–778263 issued by Maryland Casualty Company to Robert S. Marsbank, the identical person herein referred to as Robert S. Marshbank, Sr.

An appropriate order may be submitted.