GENERAL CASUALTY COMPANY OF
AMERICA, Appellant,

v.

Jessie Johnson WOODBY, Administratrix
of the Estate of Kenneth Johnson,
Appellee.

GENERAL CASUALTY COMPANY OF
AMERICA, Appellant,

v.

Delores Williams WALKER,
Appellee.

Nos. 12769–12770.

United States Court of Appeals
Sixth Circuit.

Dec. 4, 1956.

John H. Doughty, Knoxville, Tenn., (Hodges & Doughty, on the brief), for appellant.

Arthur D. Byrne, Knoxville, Tenn., (Richard Stair, Knoxville, Tenn., on the brief), for appellees.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Appellee, who was administratrix of the estate of Kenneth Johnson, filed an action in the District Court against appellant, General Casualty Company, to recover damages by reason of the death of Kenneth Johnson who was killed in an automobile accident on January 11, 1954. Appellee, Delores Walker, filed a similar action against the General Casualty Company for damages by reason of injuries suffered by her in the same accident. The cases were tried together before a jury, which returned separate verdicts for each appellee, upon which judgments were entered in the amounts of $37,642.49 and $12,906.00 respectively, followed by these appeals.

Each appellee had previously filed a separate action in the Circuit Court for Knox County, Tennessee, against James Fritts, who was the driver of the 1952 Mercury automobile which caused the accident, and had recovered default judgments against Fritts in the amounts of $35,000.00 and $12,000.00 respectively, upon which executions were issued followed by nulla bona returns thereon. The present actions were based on the theory that a blanket liability policy issued by the appellant to Thad Cheatham Motors, Inc., owner of the Mercury, covered Fritts as an additional insured under the policy's omnibus clause. This clause provided that the word "insured" in the policy "includes not only the named insured but also * * * (3) any person while using an automobile owned or hired by the named insured * * * provided the actual use is with the permission of the named insured. * * *" The policy also contained a provision that any person or the legal

representative thereof who has secured a final judgment against one insured under the policy was entitled to recover under the policy to the extent of the insurance afforded by it. The question involved is whether Fritts was using the Mercury at the time of the accident with the permission of its owner and named insured, Thad Cheatham Motors, Inc. The appellants' defense was that (1) prior to the accident Thad Cheatham Motors, Inc. had sold the Mercury to Fritts who was using it as the owner at the time of the accident in which case the Mercury was no longer covered by the policy, or (2) if the Mercury had not been sold, the use of it by Fritts at the time of the accident was without the permission of the named insured.

The evidence showed the following facts without material contradiction. Thad Cheatham Motors, Inc. was a large Lincoln-Mercury dealer, operating both a new car business and a used car business in Knoxville, Tennessee. The used car business was conducted at a separate location some distance away from the new car business, under a used car manager, Joseph Spradlin, who received a salary of approximately $700.00 per month. Several salesmen, including Roy Hunt, worked at the used car location. On the morning of January 11, 1954 Fritts, accompanied by one Kirkland, drove to the used car lot in Fritts's 1949 Chevrolet to see about trading the Chevrolet on another car. On the night before Fritts and Kirkland had stolen a considerable amount of money from a restaurant in Knoxville and before going to the used car lot had used $410.00 of it to pay off the balance owed by Fritts on the Chevrolet. Fritts discussed with Hunt the purchase of the 1952 Mercury, which was owned by Thad Cheatham Motors, Inc. and was on the lot for sale, and which was the car which was later involved in the accident. They came to an agreement regarding the purchase price, the trade-in allowance on the Chevrolet and the unpaid balance. The necessary papers, including a conditional sales contract and a note in blank, were signed by Fritts and taken by Hunt to Spradlin for his approval. Thad Cheatham Motors, Inc. did its financing with Associates Discount Corp. which was contacted with respect to the sale to Fritts. Fritts was rejected by the Discount Corporation because his credit was not acceptable in that he was not making enough money to take care of the note. Fritts suggested that an uncle in Chattanooga, Tennessee named J. B. Mullis would act as a co-signer of his note. Mullis was contacted on long distance phone and said he would sign the contract provided the car was fully covered by insurance, but not otherwise. Associates Discount Corporation was so advised and it made inquiry about Mullis. Finding him satisfactory, it advised Spradlin that it would purchase the contract and note if they were signed by Mullis. Hunt contacted an insurance agent who said he would consider insuring Fritts but wanted to see him in person before issuing the contract. Arrangements were made to send the papers to Chattanooga by mail for the signature of Mullis. Later in the afternoon Spradlin sold Fritts's Chevrolet to a used car dealer.

Fritts testified that following the telephone conversation with Mullis he told Hunt he had to leave to meet someone and Spradlin and Hunt told him to drive the Mercury which a colored boy was washing for him. They told Fritts to return about 2 P. M. The Mercury was to have a motor tune-up job as a part of the deal. Fritts and Kirkland left in the Mercury and returned to the used car lot about 2 P. M. Spradlin was there. He told Fritts that everything was "Okeh" and to come back in the morning for the tune-up job. About 11:00 P. M. on the night of January 11th, while driving the 1952 Mercury in a drunken condition, Fritts had the accident in which Kenneth Johnson was killed and Delores Walker injured.

Spradlin and Hunt testified that following the telephone conversation with Mullis, Fritts asked if he could take the Mercury and show it to his grandmother

and uncle, that Spradlin gave him permission to do so but to return in about an hour and a half because they wanted him back in the afternoon to complete the insurance, that Fritts left in the Mercury and never returned, and that he did not have permission to use the car that evening.

Thad Cheatham, President and General Manager of Thad Cheatham Motors, Inc., testified that the company had definite orders and policies, one of which was that a prospective customer should not drive a used car without a salesman accompanying him, and explained the logical reasons for such a rule. The company held a sales meeting every business morning which was attended by all of the sales personnel, including the used car sales manager, at which sales and problems were discussed, instructions given to new salesmen, and every so often company policies discussed, including the instruction not to let a prospective customer drive one of the company's cars without a salesman in it. Neither Spradlin nor Hunt was authorized to let Fritts have the car without being accompanied by a salesman.

C. E. Cooper, Secretary-Treasurer of Thad Cheatham Motors, Inc., testified that he was familiar with the rules and directives of the company relative to the use of used cars by prospective customers, that it was strictly prohibited to permit a customer to drive a used car without a salesman going with it, that he did not give to Spradlin or Hunt permission to allow Fritts to take the car alone for any period of time, and that he had no knowledge of any employee having violated the company's directives other than in the Fritts transaction.

Following the verdicts and judgments, appellants filed in each case a motion to set aside the verdict and judgment and for judgment in accordance with their motions for a directed verdict made at the conclusion of all of the evidence, on the ground that there was no evidence on which a verdict for the plaintiff could be based. In the alternative they asked that the Court grant a new trial. The motions were overruled.

On this appeal appellants do not urge upon us the defense that at the time of the accident the Mercury was owned by Fritts, and we will not discuss that phase of the case except to say that in our opinion the evidence fully sustains the judgment holding in effect that title had not passed from Thad Cheatham Motors, Inc. to Fritts. The Elgee Cotton Cases, 22 Wall. 180, 188, 22 L.Ed. 863; Williams v. Allen, 29 Tenn. 337.

Appellants' main contention is that where the named insured permits another person to use the car who in turn permits a third person to use the car without knowledge on the part of the named insured of such use, and an accident occurs while the third person is driving the car, the car is not being used with the permission of the named insured and the insurance coverage is not applicable. Such appears to be the settled law in Tennessee. American Automobile Ins. Co. v. Jones, 163 Tenn. 605, 45 S.W.2d 52; Card v. Commercial Casualty Ins. Co., 20 Tenn.App. 132, 95 S.W.2d 1281; Messer v. American Mutual Liability Ins. Co., 193 Tenn. 19, 241 S.W.2d 856. Other courts have likewise held that permission given by the car owner to the first permittee is not sufficient to imply a like permission to a second unknown user. Trotter v. Union Indemnity Co., 9 Cir., 35 F.2d 104; Aetna Casualty & Sur. Co. v. DeMaison, 3 Cir., 213 F.2d 826; Samuels v. American Automobile Ins. Co., 10 Cir., 150 F. 2d 221, 160 A.L.R. 1191. This is particularly so when the first permittee transfers possession and use of the car to another user contrary to the instructions of the owner. Columbia Casualty Co. v. Lyle, 5 Cir., 81 F.2d 281; United States Fidelity & Guaranty Co. v. Mann, 4 Cir., 73 F.2d 465, 467; Globe Indemnity Co. v. Nodlere, 10 Cir., 69 F.2d 955.

But we do not consider that to be the situation in the present case. Spradlin and Hunt were car salesmen working on the lot. They were not users of the car

within the meaning of the rule. If Fritts used the car with the permission of the owner it was by reason of being permitted to do so by Spradlin acting as the agent of the corporation, which was attempting to sell the car through his services as its agent. We think the question resolves itself into the basic question, did Thad Cheatham Motors, Inc., the named insured, give permission to Fritts through its salesmen, Spradlin and Hunt, to use the car at the time of the accident.

Considering the case in this way we agree with appellants' argument that if Spradlin gave Fritts permission to use the car without authority to do so and contrary to his instructions not to do so, appellants would not be liable under the policy. Caldwell v. Standard Accident Ins. Co., 6 Cir., 98 F.2d 364, certiorari denied, 305 U.S. 640, 59 S.Ct. 106, 85 L. Ed. 412; Cox v. Government Employees Ins. Co., 6 Cir., 126 F.2d 254; Boyd v. Liberty Mutual Ins. Co., 98 U.S.App. D.C. 107, 232 F.2d 364. Appellants contend that the evidence conclusively showed that Spradlin acted contrary to his instructions and that their motions for a directed verdict should have been sustained. The District Judge did not agree. He considered the question to be a factual issue and submitted it to the jury, which decided it adversely to appellants' contention. If the evidence was sufficient to take the case to the jury, the judgments should be affirmed.

■ In our opinion the evidence on this issue was not so conclusive as to justify a directed verdict for the appellants. Where the evidence in relation to the facts is that from which fair-minded men may draw different inferences, the case should go to the jury. It is immaterial that the Court might draw a different inference from that drawn by the jury or feel that a conclusion different from that found by the jury is more reasonable. Hutchins v. Akron, Canton & Youngstown R. Co., 6 Cir., 162 F.2d 189, 192; Edwards v. United States, 6 Cir., 140 F.2d 526, 531.

■ It is not necessary that permission to use the insured automobile be given in express words. It may be implied from all the facts and circumstances surrounding the parties. Vezolles v. Home Indemnity Co., D.C., 38 F. Supp. 455, 458, affirmed 6 Cir., 128 F.2d 257; Indiana Lumbermen's Mut. Ins. Co. v. Janes, 5 Cir., 230 F.2d 500; Glens Falls Indemnity Co. v. Zurn, 7 Cir., 87 F.2d 988. The directives upon which appellants rely were verbal directives, never reduced to writing. The evidence did not show any specific instance when they were called to the attention of Spradlin. He had been with the company only several months. Spradlin, in testifying, was not asked about such instructions. He apparently thought he had the authority to let Fritts have the car. He was in charge of the used car lot. He testified that it was good sales psychology to get a prospective customer behind the wheel of a car he was interested in and that it helped wrap up the sale for Fritts to drive off in the Mercury instead of the Chevrolet. Hunt testified that he (Hunt) did not have the authority to let Fritts drive off in the car but he thought it would be all right if Spradlin gave him permission. Rules may be waived by the managing officers of a corporation, or their infraction by employees be disregarded, when it is in the interest of the corporation to do so. Spradlin reported the details of the proposed sale to Mr. Cooper, Secretary and Treasurer of the company, about 1:00 P. M. The company's rule against use of a car by a prospective customer was not referred to in that conversation. Both Mr. Cooper and Mr. Cheatham, when questioned about the matter after the accident, stated that Fritts was entitled to use the car for whatever purpose he wanted to. This was because in their opinion Fritts had purchased the car and was the owner of it. Even though they were wrong in their legal conclusions it shows that at the time of the accident, and thereafter when all the facts were known by them, they made

no objection to Spradlin's actions in the matter and apparently acquiesced in his delivery of the Mercury to Fritts. The company continued to maintain this position until as late as September 17, 1954, when the company's attorneys, at the direction of Mr. Cheatham, wrote the garage that the company had no claim to or interest in the Mercury. This was seven days after the present actions were filed. Appellants took the same position when they filed their original answers. The defense now relied on was raised later by an amended answer. We think these facts were sufficient to take the case to the jury on the issue of the authority of Spradlin to give Fritts permission to use the car. United Services Automobile Ass'n v. Preferred Accident Ins. Co., 10 Cir., 190 F.2d 404, 406; Stoll v. Hawkeye Cas. Co., 8 Cir., 193 F. 2d 255, 260.

■ If permission were given to Fritts to use the car, we do not think it can be said as a matter of law that such permission had terminated through passage of time or was exceeded by the actual use of the car on the part of Fritts. Whether Fritts had permission to use the Mercury after 2:00 P. M. was a factual issue about which the evidence was in direct conflict. The colored boy who washed the car supported Fritts's testimony that he returned to the lot about 2:00 P. M. and talked to Spradlin. The question of the scope of a permitted use had our careful consideration recently in Branch v. U. S. Fidelity & Guaranty Co., 6 Cir., 198 F.2d 1007, in which we discussed the Tennessee cases which would be applicable here, beginning with the oft-cited ruling in Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368. The permitted use of the car in the present case was a general one without restrictions, thus bringing the case within the rulings of Stovall v. New York Indemnity Co., supra, and Foley v. Tennessee Odin Ins. Co., 193 Tenn. 206, 245 S.W.2d 202, rather than within the ruling in Moore v. Liberty Mutual Ins. Co., 193 Tenn. 519, 246 S.W.2d 960. See also our rul-

ings in Vezolles v. Home Indemnity Co., supra, 38 F.Supp. 455, affirmed 128 F. 2d 257; Preferred Accident Ins. Co. v. Barker, 6 Cir., 104 F.2d 424; Yorkshire Indemnity Co. v. Collier, 6 Cir., 172 F.2d 116; Wise v. Ohio Casualty Ins. Co., D.C., 96 F.Supp. 380, affirmed 6 Cir., 192 F.2d 1022.

■ ■ Appellants complain of the refusal of the Trial Judge to give certain instructions requested by them and of error on the part of the Trial Judge in some of the instructions which were given. These instructions in the main raised in a different way the same question which we have already discussed, namely the question of implied permission to use the car arising out of the circumstances surrounding the transaction. Since such permission can be implied as well as expressed, we think the Trial Judge was correct in submitting all the circumstances to the jury and in refusing to limit its consideration to what were the rules and regulations of the appellants respecting the use of their cars by prospective purchasers. The instructions considered as a whole made it clear to the jury that the insurance coverage did not apply if the car was being used at the time of the accident without the permission of Thad Cheatham Motors, Inc. We find no prejudicial error in the instructions.

■ The policy in the present cases obligated the appellants "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability * * * imposed upon him by law, (a) for damages * * * sustained * * * by any person. * * *" The default judgments in the State Court were in each case part compensatory and part punitive. The State Court made findings that the acts of Fritts complained of in the declarations were grossly negligent and wanton. Appellants contend that their liability policy did not obligate them to pay that portion of the judgments awarded as punitive damages, in that they are penalties rather than damages. Authorities are cited which hold that injuries inflict-

ed intentionally are not accidental injuries within the coverage of the usual liability policy. Messersmith v. American Fidelity Co., 232 N.Y. 161, 165, 133 N.E. 432, 19 A.L.R. 876; Miller v. U. S. Fidelity & Casualty Co., 291 Mass. 445, 197 N.E. 75; Commonwealth Casualty Co. v. Headers, 118 Ohio St. 429, 161 N.E. 278. But injury from gross negligence or wanton negligence is not the same as an intentional injury. We are of the opinion that the punitive damages awarded in these cases are liabilities imposed by law for damages within the meaning of the policy. Ohio Casualty Co. v. Welfare Finance Co., 8 Cir., 75 F.2d 58, certiorari denied 295 U.S. 734, 55 S.Ct. 645, 79 L.Ed. 1682; New Amsterdam Casualty Co. v. Jones, 6 Cir., 135 F.2d 191.

The judgments are affirmed.